# 14-3373-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



FEDERAL HOUSING FINANCE AGENCY, as Conservator of the Federal Home
Loan Mortgage Corporation, on behalf of the Trustee of the
GSR Mortgage Loan Trust 2007-OA1 (GSR 2007-OA1),

*Plaintiff,*

DEUTSCHE BANK NATIONAL TRUST COMPANY,

*Plaintiff-Appellant,*

*v.*

QUICKEN LOANS INC.,

*Defendant-Appellee.*

—————————

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT
## DEUTSCHE BANK NATIONAL TRUST COMPANY, SOLELY AS
## TRUSTEE OF THE GSR MORTGAGE LOAN TRUST 2007-OA1

LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, New York 10020
212-262-6700

*Attorneys for Plaintiff-Appellant
Deutsche Bank National Trust Company,
solely as Trustee of the GSR Mortgage
Loan Trust 2007-OA1*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of Deutsche Bank National Trust Company, solely in its capacity as trustee of the GSR Mortgage Loan Trust 2007-OA1, certifies that Deutsche Bank National Trust Company is a wholly-owned subsidiary of Deutsche Bank Holdings, Inc., which is a wholly-owned subsidiary of Deutsche Bank Trust Corporation, which is a wholly-owned subsidiary of Deutsche Bank AG, a publicly held banking corporation organized under the laws of the Federal Republic of Germany. No publicly held company owns 10% or more of Deutsche Bank AG's stock.

Deutsche Bank National Trust Company serves as trustee of the subject trust. The subject trust is formed under the laws of the State of New York. The subject trust has issued mortgage-backed securities that are eligible for public trading. Certain holders of those securities are believed to be publicly traded corporations.

## TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ................................................................ 1

JURISDICTIONAL STATEMENT ........................................................... 5

ISSUES PRESENTED ............................................................................. 5

STATEMENT OF THE CASE ................................................................. 6

    The Underlying Transaction ............................................................. 6

    Quicken's Repurchase Obligations .................................................. 7

    Quicken's Breaches of Its Repurchase Obligations ...................... 11

    Procedural History ......................................................................... 13

    The District Court's Ruling ........................................................... 13

SUMMARY OF THE ARGUMENT ...................................................... 15

STANDARD OF REVIEW .................................................................... 18

ARGUMENT .......................................................................................... 19

I.    THE TRIAL COURT WAS REQUIRED TO ENFORCE THE PLAIN
      TERMS OF THE ACCRUAL PROVISION, BUT FAILED TO DO SO .... 19

    A.    The Accrual Provision Reflects the Parties' Intent that
          Quicken's Obligation to Cure or Repurchase Breaching
          Loans Would Continue Past Six Years After Closing And
          Is Valid Under New York Law ............................................. 19

          1)    The Parties Agreed that No Cause of Action
                Arising from Breached R&Ws Could Accrue Until
                Certain Conditions Were Satisfied ........................... 19

          2)    New York Law Permits Parties to Define When a
                Breach Occurs and When a Cause of Action
                Accrues.................................................................... 23

3)    The Accrual Provision Properly Reflects the Parties' Reasonable Expectations that Quicken's Repurchase Obligations Extended Throughout the Life of the Trust ............................................................26

B.    The District Court Erred By Holding that the Trustee's Claims Accrued at Closing...............................................32

1)    The District Court's Reliance on ACE Is Misplaced ...............................................................32

2)    In Light of this Court's Binding Decision in *Continental*, the District Court Erroneously Held that CPLR 206(a) Applies.........................................33

3)    The Accrual Provision Does Not Extend the Statute of Limitations Indefinitely ...........................38

II.    THE DISTRICT COURT ERRED BY FINDING THAT HERA'S EXTENDER PROVISION DID NOT APPLY.............................................43

III.    THE DISTRICT COURT ERRED BY DISMISSING THE TRUSTEE'S CLAIM FOR BREACH OF THE IMPLIED COVENANT ........................46

CONCLUSION ..................................................................................50

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ....................................51

# **TABLE OF AUTHORITIES**

Page(s)

CASES

*A. Brod, Inc. v. Worldwide Dreams, LLC*,
  4 Misc. 3d 1006(A), 2004 WL 1563352 (Sup. Ct. N.Y. Cnty. May
  7, 2004) ...................................................................................................49

*ACE Securities Corp. v. DB Structured Products, Inc.*,
  112 A.D.3d 522 (1st Dept. 2013) ..............................................................32, 33

*Aetna Life & Cas. Co. v. Nelson*,
  67 N.Y.2d 169 (1986) ................................................................................19

*Am. Bldg. Contractors Assoc., Inc. v. Mica & Wood Creations, LLC*,
  23 A.D.3d 322 (2d Dept. 2005) ..............................................................24

*Beller v. William Penn Life Ins. Co.*,
  8 A.D.3d 310 (2d Dept. 2004) ..............................................................42

*Bovis Lend Lease (LMB), Inc. v. Lower Manhattan Dev. Corp.*,
  108 A.D.3d 135 (1st Dept. 2013) ..............................................................22

*British Int'l. Ins. Co. v. Seguros La Republica, S.A.*,
  342 F.3d 78 (2d Cir. 2003) ..............................................................27

*Bulova Watch Co., Inc. v. Celotex Corp.*,
  46 N.Y.2d 606 (1979) ................................................................................42, 43

*CARCO GRP., Inc. v. Maconachy*,
  718 F.3d 72 (2d Cir. 2013) ..............................................................17

*Continental Casualty Co. v. Stronghold Insurance Co. Ltd.*,
  77 F.3d 16 (2d Cir. 1996) ..............................................................passim

*Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006–OA1 v. DB
  Structured Prods., Inc.*,
  958 F. Supp. 2d 488 (S.D.N.Y. 2013) ..............................................................40, 47

*Dialcom, LLC v. AT&T Corp.*,
   20 Misc. 3d 1111(A), 2008 WL 2581876 (Sup. Ct. Kings Cnty.
   June 17, 2008) ...................................................................................47, 48, 49

*FHFA v. Goldman Sachs, et al*,
   *No*. 11-cv-6198 (DLC) (S.D.N.Y. 2011) ..........................................................46

*FHFA v. UBS Ams. Inc.*,
   712 F.3d 136 (2d. Cir. 2013) .....................................................................18, 45

*FHFA v. UBS Ams., Inc.*,
   858 F. Supp. 2d 306 (S.D.N.Y. 2012) ..........................................................44, 45

*Forman v. Guardian Life Ins. Co. of Am.*,
   76 A.D.3d 886 (1st Dept. 2010) ......................................................................46

*Frigi-Griffin, Inc. v. Leeds*,
   52 A.D.2d 805 (1st Dept. 1976) ......................................................................34

*Garza v. Marine Transp. Lines, Inc.*,
   861 F.2d 23 (2d Cir. 1988) ..............................................................................23

*George v. Mt. Sinai Hosp.*,
   47 N.Y.2d 170 (1979) ......................................................................................44

*Greenfield v. Philles Records, Inc.*,
   750 N.Y.2d 565 (2002) ....................................................................................27

*Greenfield v. Philles Records Inc.*,
   98 N.Y.2d 562 (2002) ......................................................................................22

*Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*,
   18 N.Y.3d 765 (2012) ................................................................................passim

*John J. Kassner & Co. v. City of New York*,
   46 N.Y.2d 544 (1979) ................................................................................passim

*Knuppel v. Women's Integrated Network, Inc.*,
   No. 12079/2008, 2008 WL 8212484 (Sup. Ct. Westchester Cnty.
   Oct. 21, 2008) ..................................................................................................49

*Kunstsammlungen Zu Weimar v. Elicofon*,
   678 F.2d 1150 (2d Cir. 1982) ..........................................................................34

*LaSalle Bank National Ass'n v. Capco America Securitization Corp.*,
02 CV. 9916, 2005 WL 3046292 (S.D.N.Y. Nov. 14, 2005) ............................28

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
595 F.3d 458 (2d Cir. 2010) ................................................................23

*Lawyers' Fund for Client Prot. of State of New York v. Bank Leumi Trust Co.*,
94 N.Y.2d 398 (2000) .........................................................................23

*Lehman Bros. Int'l v. AG Fin. Prods., Inc.*,
38 Misc. 3d 1233(A), 2013 WL 1092888 (Sup. Ct. N.Y. Cnty. Mar. 12, 2013)...................................................................................49

*Lehman XS Trust, Series 2006-4N v. Greenpoint Mortg. Funding, Inc.*,
991 F. Supp. 2d 472 (S.D.N.Y. 2014) ............................................33, 36

*Lorterdan Properties at Ramapo I, LLC v. Watchtower Bible & Tract Society of New York*,
No. 11-cv-3656 CS, 2012 WL 2873648 (S.D.N.Y. July 10, 2012) ..................49

*Merrill Lynch Mortg. Investors v. Love Funding Corp.*,
499 F.Supp.2d 314 (S.D.N.Y. 2007) .................................................28

*Merrill Lynch Mortgage Investors v. Love Funding Corp.*,
556 F.3d 100 (2d Cir. 2009) ......................................................27, 28

*Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*,
900 F. Supp. 2d 1222 (D. Kan. 2012), *aff'd*, 727 F.3d 1246 (10th Cir. 2013) ...........................................................................................45

*National Gear & Piston, Inc. v. Cummins Power System, LLC*,
861 F. Supp. 2d 344 (S.D.N.Y. 2012) .................................................49

*Ortiz v. Cornetta*,
867 F.2d 146 (2d Cir. 1989) .............................................................18

*PepsiCo, Inc. v. Cont'l Cas. Co.*,
640 F.Supp. 656 (S.D.N.Y. 1986) ......................................................46

*Ret. Sys. v. MBIA*,
637 F.3d 169 (2d Cir. 2011) .............................................................18

*Russack v. Weinstein*,
   291 A.D.2d 439 (2d Dept. 2002) .................................................................25

*Santos v. Dist. Council of New York*,
   619 F.2d 963 (2d Cir. 1980) ...............................................................14, 19

*Stalis v. Sugar Creek Stores, Inc.*,
   295 A.D.2d 939 (4th Dept. 2002) .............................................................42

*Town of Wawarsing v. Camp, Dresser & McKee, Inc.*,
   49 A.D.3d 1100 (3d Dept. 2008) ...............................................................39

*Travelers Indem. Co. v. Fed. Reserve Bank of New York*,
   No. 97-Civ-3766, 1997 WL 599404 (S.D.N.Y. Sept. 29, 1997).......................25

STATUTES

12 U.S.C. § 4617(b)(2)(B)(ii) ................................................................45

12 U.S.C. § 4617(b)(12) ................................................................4, 14, 17, 44

28 U.S.C. § 1291 ................................................................passim

28 U.S.C. § 1332................................................................5

28 U.S.C. § 1345................................................................44

RULES

CPLR 206(a) ................................................................passim

CPLR 213................................................................22

Fed. R. Civ. P. 12(b)(6)................................................................13

Fed. R. Civ. P. 17 ................................................................22

## PRELIMINARY STATEMENT

Deutsche Bank National Trust Company, solely in its capacity as Trustee of the GSR Mortgage Loan Trust, Series 2007-OA1 (the "Trustee" of the "Trust"), brought this suit to ensure that the trust receives the benefit of its bargain in a residential mortgage-backed securitization ("RMBS"). Quicken Loans Inc. ("Quicken") made numerous representations and warranties ("R&Ws") regarding mortgage loans (the "Mortgage Loans") sold pursuant to an Amended and Restated Seller's Purchase, Warranties and Interim Servicing Agreement (the "Quicken Sale Agreement") and eventually assigned to the Trust, which issued securities ("Certificates") backed by the Mortgage Loans to investors ("Certificateholders").

The Mortgage Loans were rife with defects and did not comply with Quicken's R&Ws. Quicken promised that, if defective loans were discovered, Quicken would cure or repurchase the Mortgage Loans (the "Repurchase Protocol"). In 2013, the Trustee provided Quicken with notice of pervasive breaches of R&Ws, but Quicken refused to repurchase or cure a single breaching Mortgage Loan. This action was commenced in 2013 to enforce Quicken's repurchase obligations.

The U.S. District Court for the Southern District of New York (Crotty, J.) dismissed the Complaint as time-barred. The District Court erroneously held that the Trustee's claims accrued when the Mortgage Loans were purchased in

2007 (*i.e.* when Quicken purportedly made the R&Ws). The District Court refused to enforce the "Accrual Provision" in the Quicken Sale Agreement which provides that "[a]ny cause of action against [Quicken] relating to or arising out of the Material Breach of any representations and warranties . . . shall accrue" only upon: (1) Quicken's discovery or receipt of notice of the breach; (2) Quicken's failure to cure such breach or repurchase such Mortgage Loan; and (3) demand by the Trustee that Quicken repurchase the Mortgage Loan.

Accordingly, the Trustee could not have brought suit, and the statute of limitations did not begin to run, until the Trustee demanded repurchase of the defective Mortgage Loans. These conditions were not satisfied until 2013. Rather than enforce the unambiguous terms of the parties' agreement, the District Court's decision rendered the Accrual Provision superfluous.

The District Court failed to apply the "general rule" in New York that "when a right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled." *John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 550 (1979). The District Court also failed to reconcile its decision with this Court's holding in *Continental Casualty Co. v. Stronghold Insurance Co. Ltd.*, 77 F.3d 16, 21 (2d Cir. 1996), which held, under circumstances analogous to those presented here, that the

accrual of a cause of action may properly be conditioned upon the issuance, and subsequent rejection, of a demand.

The Accrual Provision was carefully drafted to memorialize the parties' intent that Quicken would be obligated to cure or repurchase breaching loans throughout the entire life of the Trust. In the context of mortgage securitizations, R&W breaches often are not discovered until many years after the securitization closes. It is therefore a commercial necessity that a cause of action arising from an R&W breach does not automatically accrue at closing. By conditioning the accrual of a cause of action upon the satisfaction of certain conditions, the Accrual Provision perfectly addresses this complex commercial situation.

The District Court erroneously held that CPLR 206(a), which starts the running of the statute of limitations "when the right to make the demand is complete," governs. CPLR 206(a) does not apply where the demand requirement is "an essential element of the claim." *Cont'l*, 77 F.3d at 21. The Accrual Provision states that no cause of action "shall accrue" until certain conditions – including expiry of Quicken's right to cure – are satisfied. Thus, like in *Continental*, these conditions are "essential elements" of the Trustee's claim and CPLR 206(a) does not apply.

The District Court's decision was improperly motivated by a concern that enforcement of the Accrual Provision would allow the Trustee to extend the statute of limitations "indefinitely." The Accrual Provision does not extend the statute of limitations. Rather, it establishes when an actionable breach occurs and when the right to commence suit arises. Moreover, the Accrual Provision does not permit the plaintiff to postpone, at will, the running of the statute of limitations by delaying delivery of its breach notice. The Quicken Sale Agreement includes an express obligation to provide "prompt notice" of such breaches "upon discovery." In addition, pursuant to *Continental*, the Trustee has an implicit obligation to not "unreasonably" delay its demand. Accordingly, the District Court's concern over the Trustee's ability to extend, or delay running of, the statute of limitations is unwarranted.

The District Court further erred by deciding, with little analysis, that the Housing and Economic Recovery Act's extender provision, 12 U.S.C. § 4617(b)(12), did not extend the statute of limitations. The extender provision explicitly applies to contract actions "brought by the [Federal Housing Finance Agency] as conservator." This action was commenced by the Federal Housing Finance Agency ("FHFA"), as conservator for Federal Home Loan Mortgage Corporation ("Freddie Mac"). Because the extender provision applies, this action was timely commenced.

Finally, the District Court erred by ruling that the Trustee's claim for breach of the implied covenant of good faith and fair dealing was duplicative of its claim for breach of contract. The Trustee alleges that Quicken failed to notify the Trustee of breaches and sat silently while the limitations period purportedly ran. Such conduct is distinct from Quicken's failure to repurchase after being notified by the Trustee of breaching Mortgage Loans. Therefore, the Trustee has stated a claim for breach of the implied covenant and the District Court's order should be reversed.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 because the Trustee is a citizen of California and Quicken is a citizen of Michigan, and the amount in controversy exceeds $75,000 exclusive of interests and costs. This Court has appellate jurisdiction under 28 U.S.C. § 1291. Notice of appeal was timely filed on August 29, 2014.

## ISSUES PRESENTED

A. Whether the District Court erred by ruling that the statute of limitations began to run on the Trustee's breach of contract claim when the Mortgage Loans were purchased, despite the contract at issue expressly providing that such a claim does not "accrue" until certain conditions are satisfied, including: (1) Quicken's discovery or receipt of notice of the breach; (2) Quicken's failure to

cure such breach or repurchase such Mortgage Loan; and (3) demand that Quicken repurchase the Mortgage Loan.

      B.    Whether the District Court erred by ruling that the Housing and Economic Recovery Act's extender provision did not extend the statute of limitations despite the fact that this action was commenced by FHFA, as conservator for Freddie Mac and despite the fact that the extender statute explicitly applies to actions "brought by the [FHFA] as conservator."

      C.    Whether the District Court erred by ruling that the Trustee's claim for breach of the implied covenant of good faith and fair dealing was duplicative of its claim for breach of contract despite the fact that the Trustee alleges conduct by Quicken that is distinct from the conduct underlying the Trustee's breach of contract claim and that such conduct was intended to deprive the Trustee of the rights that it holds under the governing agreements for the benefit of the Certificateholders.

## STATEMENT OF THE CASE

### The Underlying Transaction

      Quicken originated the Mortgage Loans and then sold them to non-party Goldman Sachs Mortgage Company (the "Sponsor") pursuant to the Quicken Sale Agreement. A29. The Sponsor sold the Mortgage Loans to GS Mortgage Securities Corp. (the "Depositor"). *Id.* Through a series of assignments, the

Depositor sold the Mortgage Loans to the Trustee and assigned all of its rights, title, and interest in the Mortgage Loans to the Trustee for the benefit of the Certificateholders.[1]  A29-30.  The Sponsor also assigned to the Trustee all of its rights against Quicken including, without limitation, its rights and remedies with respect to R&W breaches.  A30.

The Mortgage Loans were securitized through the issuance of Certificates, representing interests in the Mortgage Loans, that were sold to Certificateholders in a public offering pursuant to a shelf registration statement filed with the U.S. Securities and Exchange Commission.  *Id.*  The aggregate principal balance of all loans, including the Mortgage Loans, sold to the Trust was approximately $1,152,967,774.  *Id.*  Quicken sold the Mortgage Loans to the Sponsor knowing that the Mortgage Loans would be securitized into an RMBS pool.  *Id.*  The closing date of the RMBS that included the Mortgage Loans was May 8, 2007.  *Id.*

**Quicken's Repurchase Obligations**

Quicken, as seller of the Mortgage Loans to the Sponsor, and ultimately to the Trustee for the benefit of the Certificateholders, made a series of R&Ws in the Quicken Sale Agreement concerning the characteristics, quality, and risk profile of the Mortgage Loans.  A30-31.

---

[1]    All references to the rights of the Trustee are the rights of the Trustee as assignee of the "Purchaser" under the Quicken Sale Agreement.  A33.

Under the Quicken Sale Agreement, "upon discovery" of a material breach by either Quicken or the Trustee, the parties were obligated to "give prompt written notice to the other" of such breach. A112-13. If any of Quicken's R&Ws was breached with respect to any Mortgage Loan, and if such breach materially and adversely affected the value of the Mortgage Loan or the interests of the Purchaser therein, Quicken was required to cure such breach and, if such breach was not cured, to repurchase the Mortgage Loan. *Id.* Quicken was provided 60 days to cure the breach, and an additional 15 days if Quicken was "diligently pursuing a cure and the circumstances reasonably require[d]" such extension. A113.

The Quicken Sale Agreement defines when an actionable breach by Quicken occurs, stating that "[a]ny cause of action against [Quicken] relating to or arising out of the Material Breach of any representations and warranties made in Sections 3.01 and 3.02 shall accrue as to any Mortgage Loan upon (i) the earlier of discovery of such breach by [Quicken] or notice thereof by the Purchaser to [Quicken], (ii) failure by [Quicken] to cure such Material Breach or repurchase such Mortgage Loan as specified above, and (iii) demand upon [Quicken] by the Purchaser for compliance with this Agreement." A114.

This Accrual Provision served the interests of both Quicken and the Trustee. The Accrual Provision gave Quicken the opportunity to cure the breach

-8-

or substitute another loan for the breaching loan before the Trustee would have the legal right to commence suit. A113-14. The Trustee also benefitted from the Accrual Provision. By conditioning the accrual of any cause of action upon "discovery" or "notice" of the R&W breaches and then a demand for compliance, rather than upon the initial sale of the Mortgage Loans, the Accrual Provision ensured that the Trustee (and in turn, the Certificateholders) could rely on Quicken's R&Ws and its obligation to cure or repurchase breaching loans throughout the life of the Trust. *Id.*

In the context of a securitization of 30-year mortgages, the Trustee must retain – as a commercial necessity – the ability to demand repurchase of breaching Mortgage Loans throughout the life of the Trust. Notwithstanding the existence of one or more R&W breaches, mortgage loans often continue to perform many years after closing. For example, a R&W breach might come to light only after institution of foreclosure or bankruptcy proceedings. The Accrual Provision addresses these circumstances by conditioning the accrual of any cause of action upon "discovery" or "notice" of such R&W breach, followed by an opportunity to cure. A114. The Accrual Provision thereby ensures that the Trustee would be entitled to enforce Quicken's repurchase obligations – and provide cash flows to Certificateholders – throughout the life of the Trust.

Furthermore, the credit ratings given to RMBS presume that the seller's repurchase obligations continue throughout the life of the Trust. A569; A537. The Accrual Provision reflects the parties' intent that the risk of false R&Ws would stay with Quicken, the originator of the Mortgage Loans. A27; A49. As the originator, Quicken was in a unique position to identify breaches, and was obligated to do so. A34. Quicken's possession of the relevant loan files, coupled with its unique position as originator, made it intimately familiar with the documents and information contained therein. *Id.* Quicken had access to or contact with each borrower, had the ability to request pertinent information from the borrower and verify that information using a variety of sources, and was able to inspect and appraise each mortgaged property. Additionally, Quicken agreed that it would maintain quality control with respect to its mortgage loan underwriting. A34; A95. Furthermore, the parties agreed that the Trustee would have no obligation to undertake an investigation into the accuracy of the R&Ws. A93.

The Accrual Provision was intended to prevent Quicken from avoiding its repurchase obligations by remaining silent with the knowledge of R&W breaches – and failing to provide any notice to the Trustee of such breaches – in the hope that it could later argue that the statute of limitations had expired. A34-35; A49. Given the extent of material R&W breaches present here, as alleged, viewed in conjunction with Quicken's unique position as originator and

-10-

seller of the Mortgage Loans, it is incredible that Quicken did not have notice of a single material R&W breach. *Id.*

**Quicken's Breaches of Its Repurchase Obligations**

In 2013, a Certificateholder caused two independent firms to be retained to analyze the Mortgage Loans. A36. A third-party mortgage loan underwriting firm engaged by the Certificateholder examined twenty-five Mortgage Loans sold by Quicken, revealing that all twenty-five breached one or more of Quicken's R&Ws. *Id.* In addition to the re-underwriting of loan files, a loan-level forensic examination was conducted of publicly available data related to the Mortgage Loans. *Id.* This forensic examination was also undertaken to assess whether Mortgage Loans conformed to the R&Ws Quicken made in the Quicken Sale Agreement. A37. The forensic examination revealed that 154 of the 599 Mortgage Loans reviewed — more than a quarter — breached one or more of Quicken's R&Ws. *Id.*

Specifically, the reviews of the loans identified misrepresentations, omissions, and other breaches by Quicken, including: (1) misrepresenting the borrower's income (Quicken failed to test the reasonableness of such income); (2) misrepresenting and improperly calculating debt-to-income ratios; (3) making false statements regarding the loan-to-value and combined-loan-to-value ratios; and (4) falsely reporting that properties were owner occupied. A38-42.

The R&W breaches at issue should have been discovered in the diligence process Quicken represented it undertook for each of the Mortgage Loans. A34-A35; A95. As a result, Quicken was obligated to cure or repurchase the breaching Mortgage Loans even without notice of the breaches from the Trustee. A34; A42. Contrary to that express obligation, Quicken remained silent and failed to provide notice of any of the breaches or cure or repurchase any breaching Mortgage Loans. A34-35; A42.

The loan reviews uncovered material inaccuracies, misrepresentations and/or omissions, and failures to comply with applicable loan origination guidelines that materially and adversely affected the value of the Mortgage Loans or the interests therein of the Purchaser. A37. The Trustee provided prompt notice of the breaches to Quicken upon learning of them. A43. By letter dated August 23, 2013, from the Certificateholder that prompted the reviews, the Trustee learned of Quicken's material breaches of R&Ws. *Id.* By letter dated August 27, 2013, the Trustee notified Quicken of the breaches identified by the Certificateholder and demanded that Quicken cure or repurchase all breaching Mortgage Loans pursuant to the Quicken Sale Agreement. *Id.* The Trustee received additional letters from the Certificateholder on October 9, 2013, and October 16, 2013, identifying additional breaches of R&Ws for which Quicken was responsible. A43-A44. By letters dated October 10, 2013 and October 17,

2013, respectively, the Trustee notified Quicken of those additional breaches and demanded that Quicken cure or repurchase all breaching Mortgage Loans. *Id.*

Quicken failed to cure a single breach and failed and refused to repurchase a single breaching Mortgage Loan. A46. Quicken's failure to cure or repurchase the breaching Mortgage Loans is without justification. *Id.*

**Procedural History**

On behalf of the Trustee, the FHFA, as Conservator of Freddie Mac, commenced this action on May 8, 2013 by filing a Summons with Notice ("SWN") in the Supreme Court of the State of New York, New York County. A7. Quicken removed this action to the Southern District of New York by filing a Notice of Removal, dated September 13, 2013. A11. The Trustee filed its Complaint on October 18, 2013. A26. On December 16, 2013, Quicken moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). A69.

**The District Court's Ruling**

The District Court granted Quicken's motion to dismiss, which asserted, among other things, that the Trustee's claims were time-barred. SPA1. The District Court held that the Trustee's cause of action for breach of contract accrued on the closing and transfer dates set forth in various purchase confirmation letters. The District Court did so notwithstanding the Accrual Provision, which expressly provides that any cause of action against Quicken arising out of a breach

of R&W does not accrue until: (1) the Trustee's discovery or receipt of notice of the breach; (2) Quicken's failure to cure such breach or repurchase such Mortgage Loan; and (3) demand that Quicken repurchase the Mortgage Loan. SPA5. Despite the parties' unambiguous agreement, the District Court held that such accrual clauses are unenforceable. SPA7-8.[2]

The District Court also dismissed the Trustee's alternative claim for breach of the implied covenant of good faith and fair dealing as duplicative of its breach of contract claim, even though Quicken knowingly sold defective loans but sat silently for years while foreclosure proceedings occurred and the clock ran on the Trustee's repurchase claims. SPA9. In addition, the District Court rejected the Trustee's argument that the extender provision of the Housing and Recovery Act extended the statute of limitations, despite the fact that this action was "brought by the [FHFA] as conservator or receiver" in accordance with 12 U.S.C. § 4617(b)(12). *Id.*

---

[2] The District Court granted Quicken's motion to dismiss and granted the Trustee leave to replead "only to the extent it can make good-faith allegations regarding mortgage loans subject to Purchase Confirmation Letters dated on or after May 8, 2007." SPA10. The Trustee did not replead.

-14-

## SUMMARY OF THE ARGUMENT

### I

A statute of limitations begins to run when "the plaintiff could have first successfully maintained a suit based on that cause of action." *Santos v. Dist. Council of New York*, 619 F.2d 963, 968-69 (2d Cir. 1980). Here, the parties agreed that "[a]ny cause of action against [Quicken] relating to or arising out of the Material Breach of any representations and warranties . . . shall accrue" only upon: (1) Quicken's discovery or receipt of notice of the breach; (2) Quicken's failure to cure such breach or repurchase such Mortgage Loan; and (3) demand by the Trustee that Quicken repurchase the Mortgage Loan. A114. Thus, the Trustee's claims did not accrue until 2013, when those conditions were satisfied.

Contrary to the plain terms of the Accrual Provision, the District Court determined that the Trustee's repurchase claims accrued, not as defined in the Accrual Provision, but rather on the dates the R&Ws were made in 2007. New York law permits parties to condition the accrual of a cause of action upon the occurrence of certain events. "[A]s a general rule, when the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled." *John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 550 (1979). This Court has recognized that parties may condition a claim for breach of contract on the issuance of a demand

for compliance. *See Cont'l Cas. Co. v. Stronghold Ins. Co. Ltd.*, 77 F.3d 16, 21 (2d Cir. 1996). That is precisely what the Accrual Provision does here. The Accrual Provision accounts for the fact that oftentimes breaches of R&Ws are not discovered until many years after the securitization closes. Accordingly, the parties agreed that a cause of action "shall accrue" – not at closing – but rather upon satisfaction of the notice requirement, expiration of the cure period, and demand. A114.

The District Court erroneously held that, under CPLR 206(a), the statute of limitations began to run when the Mortgage Loans were sold to the Trust. CPLR 206(a), which provides that the limitations period begins to run "when the right to make the demand is complete," applies only when the demand is not an "essential element" to a cause of action. *See Cont'l*, 77 F.3d at 21. Here, the Accrual Provision stated that notice, opportunity to cure, and demand were essential elements to any cause of action against Quicken, such that a claim "shall accrue" only after they have been satisfied. A114. As this Court held in analogous circumstances, the defendants "were not in 'breach' of their contract [] until they rejected the demand." *Cont'l*, 77 F.3d at 21.

Contrary to the District Court's concerns, enforcement of the Accrual Provision would not allow the Trustee to extend, or delay the running of, the statute of limitations "indefinitely." SPA7. Pursuant to the Quicken Sales

Agreement, the parties are obligated "upon discovery" of R&W breaches to "give prompt written notice to the other." A112-13. In addition, as this Court found in *Continental*, the Trustee has an implicit obligation to make its demand "within a reasonable period of time" and may not "unreasonably delay." 77 F.3d at 21. Therefore, the District Court's concern that the Accrual Provision improperly extends the statute of limitations is unwarranted.

## II

Alternatively, this action is timely because HERA extends the limitations period for actions brought by FHFA. The extender provision explicitly applies to contract actions "brought by the [FHFA] as conservator." 12 U.S.C. § 4617(b)(12). This action was commenced by FHFA, as conservator for Freddie Mac. The District Court should therefore be reversed.

## III

The District Court erred by ruling that the Trustee's claim for breach of the implied covenant of good faith and fair dealing was duplicative of its claim for breach of contract. In addition to breaching its repurchase obligations, Quicken seeks to benefit from its failure to provide notice of breaches of which it had knowledge. Quicken sat silently for years before ultimately arguing in court that the limitations period had run. Such conduct was designed to deprive the Trustee of the rights that it holds under the governing agreements for the benefit of the

-17-

Certificateholders. Because such conduct is distinct from the conduct underlying the Trustee's repurchase claims, the District Court's decision should be reversed.

## **STANDARD OF REVIEW**

This Court reviews issues of contract interpretation *de novo*. *See CARCO GRP., Inc. v. Maconachy*, 718 F.3d 72, 79 (2d Cir. 2013). Similarly, this Court also reviews *de novo* a district court's "interpretation and application of a statute of limitations." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA*, 637 F.3d 169, 173 (2d Cir. 2011). "[W]hile a statute of limitations defense may be raised in a motion to dismiss, such motion may not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (internal quotation and citation omitted). This Court's review of issues concerning statutory interpretation is also *de novo*. *See FHFA v. UBS Ams. Inc.*, 712 F.3d 136, 140 (2d. Cir. 2013).

**ARGUMENT**

**I.    THE TRIAL COURT WAS REQUIRED TO ENFORCE THE PLAIN TERMS OF THE ACCRUAL PROVISION, BUT FAILED TO DO SO**

**A.    The Accrual Provision Reflects the Parties' Intent that Quicken's Obligation to Cure or Repurchase Breaching Loans Would Continue Past Six Years After Closing and Is Valid Under New York Law**

Under New York law, a cause of action accrues, and the statute of limitations begins to run, "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court." *Aetna Life & Cas. Co. v. Nelson*, 67 N.Y.2d 169, 175 (1986).  In other words, the statute of limitations begins to run at the point when "the plaintiff could have first successfully maintained a suit based on that cause of action." *Santos v. Dist. Council of New York*, 619 F.2d 963, 968-69 (2d Cir. 1980).

**1)    The Parties Agreed that No Cause of Action Arising from Breached R&Ws Could Accrue Until Certain Conditions Were Satisfied**

Here, the parties agreed that certain conditions must be met before the Trustee would be entitled to obtain relief in court for claims arising out of Quicken's R&W breaches.  Section 3.03 of the Quicken Sale Agreement sets forth the parties' obligations that arise "upon discovery" of an R&W breach (*i.e.* the "Repurchase Protocol"):

> Upon discovery . . . of a breach of any of the [R&Ws set forth in section 3.02] . . . , the party discovering such Material Breach shall give prompt written notice to the other.  [Quicken] shall

-19-

> have a period of sixty (60) days from the earlier of its discovery
> or its receipt of notice of any such Material Breach within
> which to correct or cure such Material Breach. The parties
> hereby agree that if any such Material Breach is not corrected
> or cured within such sixty (60) day period, but [Quicken] is
> diligently pursuing a cure and the circumstances reasonably
> require more time than the initial sixty (60) day period,
> [Quicken] shall have an additional fifteen (15) days to cure such
> Material Breach. If [Quicken] is unable to cure such Material
> Breach within the additional period, [Quicken] shall, at the
> Purchaser's option, either repurchase such Mortgage Loan (and
> the related Servicing Rights) at the Repurchase Price.

A112-13 (also stating that, if the breached R&Ws are any of those set forth in

Section 3.01 and are not cured, Quicken would be required to repurchase "all

Mortgage Loans").

The parties agreed that any claim relating to breached R&Ws would

not "accrue" until certain conditions were satisfied. Specifically, the Accrual

Provision provides:

> Any cause of action against [Quicken] relating to or arising out
> of the Material Breach of any representations and warranties
> made in Sections 3.01 and 3.02 shall accrue as to any Mortgage
> Loan upon (i) the earlier of discovery of such breach by
> [Quicken] or notice thereof by the Purchaser to [Quicken], (ii)
> failure by [Quicken] to cure such Material Breach or repurchase
> such Mortgage Loan as specified above, and (iii) demand upon
> [Quicken] by the Purchaser for compliance with this
> Agreement.

A114.

Section 3.03 of the Quicken Sale Agreement further defines the

failure by Quicken to cure or repurchase a "defective" loan as an "Event of

-20-

Default" that triggers Plaintiff's right to relief:  "If [Quicken] fails to repurchase a defective Mortgage Loan in accordance with this Section 3.03, or fails (beyond the expiration of any applicable cure period) to cure a defective Mortgage Loan to [the Trustee]'s reasonable satisfaction in accordance with this Section 3.03, . . . that failure shall be an Event of Default and the [Trustee] shall be entitled to pursue all available remedies."  A114.[3]

Accordingly, the Trustee could not maintain suit against Quicken, and the statute of limitations did not begin to run, until the Trustee demanded repurchase of the Mortgage Loans.   Thus, the filing of the SWN on May 8, 2013 and the Complaint on October 18, 2013, were well within the six-year statute of limitations for contract actions because the Trustee demanded repurchase on August 27, 2013.[4]  *See* CPLR 213.

By asserting that the Trustee's claims are time-barred, Quicken seeks protection from the unambiguous deal that it struck.  A core principle of New York

---

[3]      This event of default is distinct from a Master Servicer Event of Default as defined in the Master Servicing and Trust Agreement.  A311-12.

[4]      This action was originally commenced on May 8, 2013, the six-year anniversary of the closing of the securitization.  Fed. R. Civ. P. 17(a)(3) states "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to . . . be substituted into the action.  After . . . substitution, the action proceeds as if it had been originally commenced by the real party in interest." (emphasis added.)  Here, the SWN was filed on behalf of the Trust, and the Trustee took over the action upon filing the Complaint in this Court after the case was removed.  Under Fed. R. Civ. P. 17, this action should thus proceed as if it was commenced by the Trustee on the date the SWN was filed.

law is that an agreement must be enforced according to its terms.  *See, e.g.,*
*Greenfield v. Philles Records Inc.*, 98 N.Y.2d 562, 569 (2002) ("a written
agreement that is complete, clear and unambiguous on its face must be enforced
according to the plain meaning of its terms").  Indeed, New York law does not
permit a court to re-write an agreement to relieve a party, particularly a
sophisticated party, from any disadvantage resulting from its promises.  *See id.* at
569-70 ("Thus, if the agreement on its face is reasonably susceptible of only one
meaning, a court is not free to alter the contract to reflect its personal notions of
fairness and equity."); *Bovis Lend Lease (LMB), Inc. v. Lower Manhattan Dev.
Corp.*, 108 A.D.3d 135, 145 (1st Dept. 2013) ("[W]hen parties set down their
agreement in a clear, complete document, their writing should as a rule be enforced
according to its terms.  This is especially true where, as here, the parties are
sophisticated business entities represented by counsel.") (internal quotation marks
and citation omitted).  The Accrual Provision is neither ambiguous nor reasonably
susceptible to an alternate reading.  Quicken simply seeks to avoid its repurchase
obligations in contravention of the sophisticated parties' agreement and New York
contract law.

  Contrary to the plain terms of the Accrual Provision, the District
Court determined that the Trustee's repurchase claims accrued, not as defined in
the Accrual Provision, but rather on the dates the R&Ws were made in 2007.

-22-

SPA8. In so doing, the District Court adopted an interpretation of the Quicken Sale Agreement that rendered the Accrual Provision superfluous. *See, e.g.*, *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) ("The court should read the integrated contract as a whole to ensure that undue emphasis is not placed upon particular words and phrases, and to safeguard against adopting an interpretation that would render any individual provision superfluous.") (internal quotation marks and citation omitted); *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988) ("Under New York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'"); *Lawyers' Fund for Client Prot. of State of New York v. Bank Leumi Trust Co.*, 94 N.Y.2d 398, 404 (2000) ("[Defendant's] interpretation would render the second paragraph superfluous, a view unsupportable under standard principles of contract interpretation."). The District Court's decision to ascribe no meaning or purpose to the Accrual Provision should have been "avoided" by holding Quicken to its unambiguous repurchase obligation.

### 2) New York Law Permits Parties to Define When a Breach Occurs and When a Cause of Action Accrues

The Accrual Provision clearly states the conditions that must be satisfied prior to bringing suit. Under New York law, parties are free to condition the accrual of a cause of action, such as breach of contract, upon the occurrence of

specified events.  The New York Court of Appeals has repeatedly recognized that "when the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled." *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 770 (2012); *see also John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 550 (1979) ("And, as a general rule, when the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled."); *Am. Bldg. Contractors Assoc., Inc. v. Mica & Wood Creations, LLC*, 23 A.D.3d 322, 323 (2d Dept. 2005) ("[T]he payment bond itself . . . contained a possibly more liberal accrual date – the date on which the [defendant] ceased work on the contract.  If, on the facts of this case, the bond's accrual date is more favorable to the plaintiff, it governs rather than the [accrual date] prescribed by [law].").

Indeed, this Court and others have specifically held that, under New York law, parties are entitled to condition accrual of a claim for breach of contract upon the issuance of a demand.  *See*, *e.g.*, *Cont'l Cas. Co. v. Stronghold Ins. Co. Ltd.*, 77 F.3d 16, 21 (2d Cir. 1996) (holding that because notice and a reasonable time to respond were conditions to insurer's contractual claim for indemnity, the plaintiff "had no right to indemnity under the policies until it satisfied this provision," and "the reinsurers were not in 'breach' of their contract to indemnify

until they rejected the demand"); *Travelers Indem. Co. v. Fed. Reserve Bank of New York*, No. 97-Civ-3766, 1997 WL 599404, at *2 (S.D.N.Y. Sept. 29, 1997) (holding that defendant "could not breach this provision of the agreements and a cause of action could not accrue until plaintiff had fulfilled the notice and demand condition"); *Russack v. Weinstein*, 291 A.D.2d 439, 441 (2d Dept. 2002) ("[S]tatute of limitations did not begin to run until 60 days after the plaintiff's written demand for payment.").

That is precisely what the Accrual Provision does here. The Accrual Provision expressly encompasses "any cause of action against [Quicken] relating to or arising out of a Material Breach of any representations and warranties." A114. A "Material Breach" is defined as a "breach [which] materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser in any Mortgage Loan." A113. Only after Quicken failed to cure or repurchase a defective Mortgage Loan containing a Material Breach of a R&W could the Trustee sue for breach. Thus, contrary to the District Court's decision, the Accrual Provision defined when an actionable breach occurs; that is, upon: (i) "discovery" of the breach and notice thereof; (ii) Quicken's failure to cure or repurchase after an opportunity to investigate and expiry of the cure period; and (iii) demand by the Trustee for compliance. A114. The District Court's rejection of the Accrual Provision cannot be reconciled with the authorities and principles cited above –

-25-

and in particular with this Court's decision in *Continental* – and the District Court should therefore be reversed.

> **3) The Accrual Provision Properly Reflects the Parties' Reasonable Expectations that Quicken's Repurchase Obligations Extended Throughout the Life of the Trust**

The District Court's determination that the Trustee's claim accrued at the time of sale fails to take into account the commercial realities of RMBS. In the context of securitizing 30-year mortgages, the ability of the Trustee to "put back" breaching Mortgage Loans throughout the life of the Trust makes perfect commercial sense and is, in fact, a commercial necessity. The Mortgage Loans, by their nature, are long-term instruments with typical durations of 30 years. It was contractually accounted for in the Quicken Sale Agreement that R&W breaches could and would be discovered many years after they were made. A112 ("It is understood and agreed that the representations and warranties set forth in Section 3.01 and 3.02 shall survive the sale of the Mortgage Loans [.]"). Accordingly, the Repurchase Protocol is not triggered until "discovery" of a materially false R&W. A112-13. Similarly, a cause of action arising from a materially false R&W cannot accrue until after "notice or discovery" of a materially false R&W, an opportunity to cure, and demand for compliance. A114. As such, the Accrual Provision reflects the parties' intent that Quicken's repurchase obligations would be enforceable – to provide cash flows to Certificateholders – <u>throughout the life of</u>

the Trust. *See, e.g.*, *Greenfield v. Philles Records, Inc.*, 750 N.Y.2d 565, 569 (2002) ("the fundamental neutral precept of contract interpretation is that agreements are construed in accord with parties' intent"); *British Int'l. Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 82 (2d Cir. 2003) (contract interpretation seeks "to give effect to the intention of the parties as expressed in the unequivocal language they have employed").

The facts encountered by this Court in *Merrill Lynch Mortgage Investors v. Love Funding Corp.*, 556 F.3d 100, 105 (2d Cir. 2009), provide a useful illustration of how, in the context of securitized mortgages, R&W breaches may not come to light until many years after closing. The securitization in *Love Funding* closed in 1999. The specific mortgage loan at issue was current on interest and principal as of March 2002. *Id.* After the borrower failed to pay into escrow certain amounts required for repairs on the subject property, foreclosure proceedings were commenced, at which point it was discovered that the borrower had committed fraud to obtain the loan, which fraud constituted a breach of the seller's R&Ws. *Id.*; *see also Merrill Lynch Mortg. Investors v. Love Funding Corp.*, 499 F.Supp.2d 314, 317-18 (S.D.N.Y. 2007).

Similarly, in *LaSalle Bank National Ass'n v. Capco America Securitization Corp.*, 02 CV. 9916 (RLC), 2005 WL 3046292 (S.D.N.Y. Nov. 14, 2005), the borrower obtained a commercial mortgage loan in June 1998. The

defendant sold the loan into the trust at issue in September 1998 and warranted that it would provide U.C.C. financing statements on the borrower's real and personal property.  *Id.* at *2-3.  The borrower filed a petition for voluntary bankruptcy in March 2002.  Upon subsequent review of the mortgage filings, nearly four years after purchasing the mortgage, the trustee learned that the U.C.C. filing referred only to the borrower's real property and did not give the trustee a security interest in the borrower's personal property.  *Id.* at *3.  Thus, when the borrower declared bankruptcy, the trustee's interests were impaired.[5]

As exemplified by these cases, knowledge of R&W breaches often does not arise until many years after closing.  Indeed, even a loan in breach of a R&W might continue to perform for years after closing.  In such situations, a demand would be made to cure the defect or, where such defect could not be cured, repurchase the mortgage loan.  The Accrual Provision here was intended to provide a remedy to the Trustee – without regard to how long after closing such breaches are discovered.

Absent the ability to enforce obligations that are designed to provide cash flows to investors throughout the life of the Trust, issuers of RMBS could ultimately encounter severe challenges finding investors.  *See* Karen B. Galernt,

---

[5]      Neither *Love Funding*, 556 F.3d 100, nor *LaSalle Bank*, 2005 WL 3046292, involved the statute of limitations but their underlying facts are illustrative of how R&W breaches are often discovered many years after closing.

*Secondary Market Residential Mortgage Transactions* §§ 4.04(1), 4:27-28, 3.02(3), 3:3-4 (2009) ("In a typical secondary market sale, the purchaser will expect that representations and warranties will survive indefinitely," and "Missing or limited representations and warranties will decrease the price the purchaser is willing to pay.").

        As further illustration, the credit ratings given to RMBS assume that the seller's repurchase obligations continue throughout the life of the trust. Here, as in virtually all issuances of RMBS, credit ratings were a pre-condition to issuance of the Certificates. A569. The credit ratings reflect the likelihood of repayment on the Certificates throughout the life of the Trust – not merely the likelihood of repayment over the first six years. A569; A537. The credit ratings, therefore, account for the ability to "put back" breaching loans to Quicken, and thereby ensure repayment on the Certificates, throughout the life of the Trust. A569 ("The ratings assigned to this issue . . . are an indication of the likelihood of the payment of principal and interest as set forth in the transaction document."); *see also Disclosure for Asset-Backed Securities Required by Section 943 of the Dodd-Frank Wall Street Reform and Consumer Protection Act*, 76 Fed. Reg. 17,4489, 17,4490 (2011) (noting that a party must repurchase or substitute pool assets where representations and warranties are breached under transaction covenants). Quicken — not the Trust or Certificateholders — accepted the risk of

the economic consequences of materially false R&Ws. A27; A49. The Accrual Provision reflects this intentional apportionment of rights and obligations that places the continuing responsibility on Quicken to (i) provide notice to the Trustee of R&W breaches promptly upon discovery of those breaches and (ii) cure or repurchase the Mortgage Loans sold to the Trustee in breach of R&Ws.

As the originator of the Mortgage Loans, information concerning the truth or falsity of the R&Ws was uniquely known to Quicken. A34-35. The risk that a borrower's financial information was misrepresented, or that the Mortgage Loans were not underwritten in accordance with applicable guidelines, was therefore allocated squarely to Quicken. A27; A49. Indeed, the parties agreed that the Trustee would have no independent obligation to investigate whether Quicken's R&Ws were true. A93. Without the Accrual Provision, Quicken would be incentivized to sit silently in the hope that, if and when its R&W breaches were revealed, it could prevail on an argument that the statute of limitations barred a claim for enforcement of its cure and repurchase obligations. A49. Furthermore, given that a servicer or originator could intentionally delay release of the loan files to investors that would have revealed breaches, it would have been unreasonable for the parties to impose a six-year time limit on litigation, measured from the date of the securitization closing. *See* Jeff Horwitz, *MBS Trustees Push JPMorgan Chase for Access to Files*, Mortgage Servicing News, Mar. 1, 2011 (reporting that

-30-

"servicers may choose to fight or delay trustees rather than hand over the loan files necessary to make repurchase requests").

Reflecting this commercial reality, the Accrual Provision provides that a claim against Quicken "shall accrue upon the earlier [] of discovery . . . or notice" of the falsity of an R&W <u>and</u> Quicken's subsequent failure to cure or repurchase the breaching Mortgage Loans, rather than upon the sale of the Mortgage Loans.  A114.  By its clear terms, the Accrual Provision presupposes that Quicken's obligation to cure or repurchase continues throughout the life of the Trust.

Quicken also benefitted from the Accrual Provision by having an opportunity to cure or replace a breaching Mortgage Loan, and receiving a demand for compliance with the Quicken Sale Agreement.  *Id*.  The Accrual Provision's conditions were not satisfied until 2013 when both: (i) the Trustee notified Quicken of breaches and demanded that it cure the breaches or repurchase the loans; and (ii) Quicken failed to repurchase the loans after expiry of the Cure Period.  A43-45.  Commencement of this action in 2013 is therefore timely and the District Court should be reversed.

**B.** **The District Court Erred By Holding that the Trustee's Claims Accrued at Closing**

    **1)** **The District Court's Reliance on ACE Is Misplaced**

The District Court erred by relying on the First Department's decision in *ACE Securities Corp. v. DB Structured Products, Inc.*, 112 A.D.3d 522 (1st Dept. 2013) ("*ACE*"). The District Court dismissed the Trustee's claims as time-barred based largely on *ACE*, which held that any breach by a defendant of its obligations relating to the R&Ws ran from the closing date of the securitization (*i.e.* when the R&Ws were made). SPA6. However, even assuming that *ACE* was correctly decided – though, the Trustee submits it was not[6] – the relevant agreement in *ACE* did not involve an accrual provision that expressly defined when a breach occurred and a claim for breach accrued. *ACE* is therefore inapposite.

The District Court also relied on three district court cases, only one of which involved an accrual clause similar to the one at issue here. *See Lehman XS Trust, Series 2006-4N v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472 (S.D.N.Y. 2014) ("*LXS*"). As discussed in greater detail below, *LXS* was wrongly decided because: (i) the Accrual Provision constitutes a "substantive" demand requirement that renders CPLR 206(a) and the accrual-at-sale rule inapplicable;

---

[6]    The First Department's *ACE* decision is presently on appeal before the New York Court of Appeals. 23 N.Y.3d 906 (2014).

and (ii) permitting sophisticated parties to define when a cause of action accrues does not equate to an agreement to extend the statute of limitations indefinitely.[7]

### 2) In Light of this Court's Binding Decision in *Continental*, the District Court Erroneously Held that CPLR 206(a) Applies

CPLR 206(a) provides that "where a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete." However, "New York courts do not instinctively apply CPLR 206(a) in every case where a demand is a predicate to suit. Rather they distinguish between substantive demands and procedural demands." *Cont'l*, 77 F.3d at 21. "[W]here a demand is an essential element of the plaintiff's cause of action . . . CPLR 206(a) does not apply." *Id.*; *see also Kunstsammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150, 1161 (2d Cir. 1982) ("Where the demand requirement is substantive, that is, where a demand and refusal are requisite elements of the cause of action, [the claim] accrues and the statute of limitation begins to run only after

---

[7]     Moreover, the accrual provision in *LXS* is distinguishable from the Accrual Provision here. Section 3.03 of the Quicken Sale Agreement defines the failure by Quicken to cure or repurchase a "defective" loan as an "Event of Default" that triggers Plaintiff's right to relief. A114. In *LXS*, the court looked to the definition of the term "Breach" within the accrual clause to find that a "breach" occurred when the R&W was made. *LXS*, 991 F. Supp. 2d at 478. Such analysis is inapposite here in view of the express definition of "Event of Default," which is consistent with the clear terms of the Accrual Provision which provides that no actionable breach occurs until notice, an opportunity to cure, and demand. A114. *See supra* footnote 3.

such demand and refusal."); *Frigi-Griffin, Inc. v. Leeds*, 52 A.D.2d 805, 806 (1st Dept. 1976) ("when demand is of a substantive nature . . . the statute runs only after demand has been refused").

Citing CPLR 206(a), the District Court properly framed the issue as "whether a given demand requirement is a procedural one, which does not delay the running of the period of limitations for bringing suit, or a substantive one, which does." SPA5. However, the District Court erroneously concluded that the Accrual Provision was a "procedural" requirement and thus CPLR 206(a) applied and the limitations period began to run when the R&Ws were made (*i.e.*, on the dates the Mortgage Loans were purchased). SPA8. In addition to rendering the Accrual Provision superfluous in contravention of New York contract law as discussed above, such a finding is at odds with controlling Second Circuit and New York Court of Appeals precedent.

The Accrual Provision memorializes a "substantive demand" because it specifies that demand is a requisite element of any cause of action against Quicken.[8] In other words, the parties agreed that no cause of action could accrue until Quicken is given an opportunity to investigate and respond to a breach (whether such breach is discovered by Quicken or Quicken is notified of such

---

[8] The Repurchase Protocol also constitutes a "substantive demand" because, although it does not expressly state when a claim arising from breached R&Ws accrues, it sets forth the requisite elements, including an opportunity to cure, that must be satisfied before the Trustee is entitled to bring suit.

-34-

breach).  A114.  This Court's decision in *Continental* is directly on point. *Continental* involved insurance contracts that contained demand requirements analogous to those in the Accrual Provision:

> [A] "demand," in the form of notice to the reinsurers of actual losses on the underlying insurance policies, is an essential element of Continental's indemnity claims.  As we have made clear, Continental had no right to indemnity under the policies until it satisfied this provision.  And, the reinsurers were not in "breach" of their contract to indemnify until they rejected the demand (or until a reasonable time for paying the losses elapsed).  Accordingly, CPLR 206(a) does not apply.

*Cont'l*, 77 F.3d at 21.

Similarly, under the Quicken Sale Agreement, the Trustee's right to relief did not "accrue" until: (i) "discovery of such breach by [Quicken] or notice thereof"; (ii) "failure by [Quicken] to cure such Material Breach or repurchase such Mortgage Loan"; and (iii) "demand" upon [Quicken] for compliance.  A114. As the Accrual Provision makes clear, and in accordance with *Continental*, Quicken was not in "breach" of the Quicken Sale Agreement until it rejected the demand.  Thus, the demand requirement of the Accrual Provision constitutes a substantive element of the Trustee's causes of action against Quicken, and CPLR 206(a) does not apply.

Neither the District Court's decision nor the decision in *LXS* can be reconciled with *Continental*.  Moreover, to the extent the District Court and *LXS* court relied on the New York Court of Appeals' decisions in *Hahn* and *Kassner* to

-35-

read the Accrual Provision out of existence, such reliance is misplaced. Although factually distinguishable, the framework set forth in *Hahn* and *Kassner* is consistent with *Continental* and requires enforcement of the Accrual Provision.

In *Hahn*, the claimant sent an invoice for payment but conceded that it could have sent the invoice over a decade earlier; it had failed to do so out of "inadvertence." *Hahn*, 18 N.Y.3d at 771. The New York Court of Appeals held that the claimant's cause of action accrued ten years earlier when claimant could have sent the invoice. The court found that the agreement at issue did not contain any accrual provision, observing that "[the claimant] cannot point to any contract language unambiguously conditioning its right to payment on its own demand." *Id.* at 771–72. It was on this basis that the Court of Appeals distinguished its decision from the Second Circuit's decision in *Continental*. *Id.* at 772 n.5 (noting that, in *Continental*, "the reinsured's obligation to give notice to the reinsurers of the underlying claims was a condition precedent."); *see also id.* at 772 (observing that, unlike in *Continental*, the contract "contain[ed] no condition precedent and [claimant] did not need to give [defendant] any time to investigate."). In so doing, the Court of Appeals acknowledged that "when the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled." *Id.* at 770 (quoting *Kassner*, 46 N.Y.2d at 550). Thus, finding that the Trustee's claims here did not accrue until after

-36-

Quicken had an opportunity to cure or substitute defective Mortgage Loans comports with the analysis in *Hahn*.

The Accrual Provision falls squarely within the rule expressed in *Kassner* and repeated in *Hahn* because the Trustee had no right to enforce Quicken's repurchase obligations, and bring suit, until Quicken failed to cure or repurchase the breaching loans following a demand. Although the Court of Appeals in *Kassner* ultimately found that the plaintiff's claims were time-barred, its decision does not undermine the validity of the Accrual Provision here.

In *Kassner*, the plaintiff sought to enforce a contractual provision that stated: "No action shall be . . . maintained against the City [for breach of contract] unless such action shall be commenced within six (6) months after" the filing of a certificate for final payment. *Kassner*, 46 N.Y.2d at 548. The plaintiff completed the work and sent an invoice in December 1967, but did not file the certificate for final payment until over 6 years later in 1974. *Id.*; *see also Hahn*, 18 N.Y.3d at 771-72 (claimant conceded it could have sent invoice over a decade earlier but "failed to do so through inadvertence"). The plaintiff argued that its cause of action did not accrue until the filing of the certificate. The court rejected the plaintiff's argument, holding that "the contract does not state that the plaintiff's right to final payment is conditioned upon the filing of a certificate of final payment." *Kassner*, 46 N.Y.2d at 550. Instead, the court found that such language

was merely a "limitations provision" that did not purport to define when a claim for breach accrued. *Id.* at 551-52. Thus, the court found that the plaintiff was, in effect, seeking to extend the statute of limitations where it was "doubtful that the parties actually intended to postpone the accrual of the cause of action or anticipated that this provision would ever be employed to extend the expiry of the statutory period." *Id.* at 552.

The Accrual Provision is nothing like the provision at issue in *Kassner* and, as described above, the Accrual Provision was very clearly intended to define when a breach accrued. The "accrual" of a cause of action against Quicken is expressly conditioned on (i) "discovery of such breach by [Quicken] or notice thereof"; (ii) "failure by [Quicken] to cure such Material breach or repurchase such Mortgage Loan"; and (iii) "demand" upon Quicken for compliance. A114. Thus, the Accrual Provision falls well within the rule announced in *Kassner*, applied in *Continental*, and recently restated in *Hahn*. The District Court, therefore, erred by refusing to enforce the Accrual Provision.

### 3) The Accrual Provision Does Not Extend the Statute of Limitations Indefinitely

The District Court erroneously declined to enforce the Accrual Provision over concerns that it "would allow [a plaintiff] to extend the statute indefinitely simply by failing to make a demand." SPA7-8. To be clear, the Trustee does not seek to extend the statute of limitations at all, let alone

-38-

"indefinitely." Rather, the Accrual Provision establishes when an actionable breach occurs and the right to maintain suit arises. A114. As discussed above, New York law recognizes the right of the parties to an agreement to define when a breach occurs and a claim accrues. *See Town of Wawarsing v. Camp, Dresser & McKee, Inc.*, 49 A.D.3d 1100, 1103-04 (3d Dept. 2008) (where the defendant agreed to remedy defects for one year after completion of services, the cause of action did not accrue until the end of that time, and the accrual provision "[did] not constitute an agreement to extend the statute of limitations of the type that was declared invalid by [*Kassner*]"); *see also supra* at Section I.A.2.

The District Court's concern over delaying the running of the statute of limitations is misplaced in these circumstances. This Court's decision in *Continental* addressed this issue and rejected the argument that an accrual-on-demand rule by its very nature allows plaintiffs to put off the running of the statute of limitations "indefinitely." *Cont'l*, 77 F.3d at 21. If a plaintiff unreasonably delays in making such demand, courts have the power to dismiss the cause of action. This Court in *Continental* found that a plaintiff has an implicit obligation to make its demand "within a reasonable period of time under the circumstances." *Id.* at 21 ("once [the insurer] suffered losses on the underlying policies, it cannot unreasonably delay reporting those losses to the reinsurers").

Even more significantly, the Quicken Sale Agreement expressly obligates the parties, "upon discovery" of R&W breaches, to "give *prompt* written notice to the other." A112-13 (emphasis added). The Trustee learned of material breaches of R&Ws by letters from the Certificateholder dated August 23, 2013, October 9, 2013, and October 16, 2013. In each instance, the Trustee notified Quicken of these breaches and demanded repurchase within days of discovery, by letters dated August 27, 2013, October 10, 2013, and October 17, 2013, respectively. A43-45. Thus, Quicken cannot establish that the Trustee delayed at all (let alone unreasonably) in demanding compliance with the Quicken Sale Agreement. *See Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006–OA1 v. DB Structured Prods., Inc.*, ("*DBALT*"), 958 F. Supp. 2d 488, 496 (S.D.N.Y. 2013) (denying motion to dismiss and noting that "the time elapsed since the Closing Date is irrelevant in evaluating whether [p]laintiff's notice was 'prompt'"). Therefore, the District Court's concern that the Accrual Provision would allow the Trustee to put off the running of the limitations period "indefinitely" is unfounded and insufficient to overcome the presumption, under New York law, that parties should be held to their unambiguous promises.

The *Kassner* court cautioned that certain clauses that indefinitely extend the statute of limitations may be stricken on public policy grounds because they are "the result of ignorance, improvidence, an unequal bargaining position or

-40-

[are] simply unintended." *Kassner*, 46 N.Y.2d at 551. The Accrual Provision here is nothing like those clauses. To the contrary, the Accrual Provision is the product of careful drafting by sophisticated commercial parties, designed to address the specific circumstances inherent in RMBS. The Accrual Provision reflects the parties' intent that the Trustee would be entitled to demand that Quicken cure or repurchase defective Mortgage Loans throughout the life of the Trust, notwithstanding the fact that more than six years had elapsed since the Mortgage Loans were sold into the Trust. A114. The Accrual Provision also provides Quicken with an opportunity to cure before a lawsuit could be maintained against it. *Id.* The Accrual Provision thus provides a contractual solution to a complex commercial issue. Such circumstances are entirely different from the situation in *Kassner*, where the New York Court of Appeals found that the plaintiff sought to extend the statute of limitations via a "limitations provision" that was intended to shorten the limitations period. *Kassner*, 46 N.Y.2d at 552.

Furthermore, New York law recognizes that the statute of limitations should not be used as a proxy to determine the duration of a parties' obligation to perform under a contract. Indeed, as a matter of common sense, parties must be free to undertake contractual obligations that extend beyond six years from consummation. In such instances, the statute of limitations begins to run when the obligation is breached, not when the promise to perform is made. *See*, *e.g.*, *Bulova*

-41-

*Watch Co., Inc. v. Celotex Corp.*, 46 N.Y.2d 606, 608-09 (1979) (holding that where a supplier gave purchaser a "20-year Guarantee Bond" that a roof would not leak, a cause of action would run for six years from whenever during that 20-year period the supplier failed to repair the roof); *Stalis v. Sugar Creek Stores, Inc.*, 295 A.D.2d 939, 940-41 (4th Dept. 2002) ("Because defendant's obligation was a continuing one, the claims for breach of that obligation are 'not referable exclusively to the day the original wrong was committed.'") (internal citations omitted); *Beller v. William Penn Life Ins. Co.*, 8 A.D.3d 310, 314 (2d Dept. 2004) (the subject insurance contract imposed a duty upon the defendant to consider the factors comprising the cost of insurance before changing rates, and to review the cost of insurance rates at least once every five years to determine if a change should be made).

In *Bulova*, the defendants promised to repair any defects in a roof for 20 years. The Court of Appeals held that each failure by defendants over that 20-year period to repair the roof would begin the running of the statute of limitations anew regardless of whether such defect existed at closing. *Bulova*, 46 N.Y.2d at 608. Similarly, Quicken made R&Ws concerning the quality of the Mortgage Loans and, if certain conditions were met, undertook to repurchase violative Mortgage Loans. A112-14. The Accrual Provision makes clear that Quicken's cure or repurchase obligations with respect to R&W breaches arose only upon the

-42-

satisfaction of all conditions – including Quicken's right to cure – without regard to whether such defect existed at closing.  A114.

Despite the clear language of the Accrual Provision and the commercial necessity that Quicken's cure or repurchase obligations extend throughout the life of the Trust, the District Court decided that Quicken's R&Ws are worthless after six years.  The Accrual Provision was intended to prevent such a result.  Quicken should be held to its promises, rather than relieved of them by application of an accrual rule that would render the Accrual Provision superfluous. Therefore, this Court should reverse the District Court's Decision.

## II.  THE DISTRICT COURT ERRED BY FINDING THAT HERA'S EXTENDER PROVISION DID NOT APPLY

Alternatively, this action is timely because HERA extends the limitations period for cases brought by FHFA.  The District Court erred by holding, with little substantive analysis, that HERA's extender provision "does not apply."  SPA9.  HERA provides that, "[n]otwithstanding any provision of any contract . . . in the case of any contract claim . . . the date on which the statute of limitations begins to run" with respect to "any action brought by [FHFA] as conservator . . . shall be the later of . . . (i) the date of the appointment of [FHFA] as conservator . . . or (ii) the date on which the cause of action accrues."  12 U.S.C. § 4617(b)(12) (emphasis added).  In enacting HERA, "Congress intended to prescribe comprehensive time limitations for 'any action' that the Agency might

-43-

bring as conservator." *See FHFA v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 317 (S.D.N.Y. 2012) (emphasis in original) ("*FHFA I*"). The HERA extender provision applies here because, through the filing of the SWN, this "contract claim" was "brought by the Agency as conservator" within the meaning of Section 4617(b)(12). A7. FHFA was appointed conservator of Freddie Mac on September 6, 2008. This action was commenced fewer than 6 years later and is therefore timely.

The fact that the Trustee subsequently took over the action does not change the analysis. *See George v. Mt. Sinai Hosp.*, 47 N.Y.2d 170, 178 (1979) (holding that a suit filed by a plaintiff who lacked capacity to sue was validly commenced because "the defect . . . did not lie in the means of commencing the action, but rather in the identity of the named plaintiff"). Indeed, the basis for Quicken's removal of this action was FHFA's status as "a federal agency within the meaning of 28 U.S.C. § 1345." A12.

Congress specifically enacted HERA to address the dire financial straits of government-sponsored enterprises like Freddie Mac that suffered losses during the housing crash. *See FHFA v. UBS Ams. Inc.*, 712 F.3d 136, 142 (2d Cir. 2013) ("*FHFA II*"). To help restore entities like Freddie Mac to a sound and solvent condition, Congress granted FHFA sweeping authority to take any action to "collect all obligations and money due" to them. 12 U.S.C. § 4617(b)(2)(B)(ii).

Additionally, "Congress enacted HERA's extender statute to give FHFA the time to investigate and develop potential claims [.]"  *FHFA II*, 712 F.3d at 142.  If the HERA extender does not apply to this case—where FHFA filed this action on behalf of the Trustee—then the extender would not apply to any RMBS repurchase claims.  *See FHFA I*, 858 F. Supp. 2d at 316 (stating a narrow construction of the extender provision would "undermine the congressional purpose"); *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, 900 F. Supp. 2d 1222, 1240 (D. Kan. 2012) (statute should be "construed in favor of the government and in conformity with its apparent purpose"), *aff'd*, 727 F.3d 1246 (10th Cir. 2013).  The District Court's refusal to apply the HERA's extender provision because FHFA is no longer a named party would "undermine the congressional purpose" of HERA.  *See FHFA I*, 858 F. Supp. 2d at 316.

Similarly, the District Court's observation that "FHFA is already seeking redress in this Court for losses Freddie Mac suffered on its investment in this Trust in a separate matter," is irrelevant.  SPA9 (citing *FHFA v. Goldman Sachs*, *et al, No*. 11-cv-6198 (DLC) (S.D.N.Y. 2011)).  The claims against Goldman Sachs, and others, pertain to dozens of trusts.  The claims were not brought against Quicken, do not concern Quicken, and could not remedy any breaches of contract by Quicken.  Therefore, the existence of the other action should have no impact on whether this action satisfies the statutory requirements of

HERA. Because this action falls within the ambit of HERA's broadly worded extender provision and was commenced within six years of FHFA's appointment as Conservator on September 6, 2008, it is timely. The District Court should therefore be reversed.

### III. THE DISTRICT COURT ERRED BY DISMISSING THE TRUSTEE'S CLAIM FOR BREACH OF THE IMPLIED COVENANT

The District Court erred by dismissing the Trustee's breach of the implied covenant of good faith and fair dealing as "redundant" of its breach of contract claims. "It is axiomatic that all contracts imply a covenant of good faith and fair dealing in the course of performance [embracing] a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract*." Forman v. Guardian Life Ins. Co. of Am.*, 76 A.D.3d 886, 888 (1st Dept. 2010) (internal citations and quotations omitted). "[A] claim for breach of the implied covenant of good faith and fair dealing can be maintained, even though it arises from the same underlying transactions and occurrences as a breach of contract claim, where it contains allegations that are not duplicative of the plaintiff's contract claims, but are claims that acts perpetrated by defendants deprived the plaintiff of the fruits of the contract." *Dialcom, LLC v. AT&T Corp.*, 20 Misc. 3d 1111(A), 2008 WL 2581876, at *9 (Sup. Ct. Kings Cnty. June 17, 2008) (internal citations and

quotations omitted); *see also PepsiCo, Inc. v. Cont'l Cas. Co.*, 640 F.Supp. 656, 664 (S.D.N.Y. 1986).

The Trustee's breach of contract claim is based on Quicken's breach of its contractual obligations arising from R&W defects.   A36-42; A45-46. Meanwhile, the Trustee's implied covenant of good faith and fair dealing claim – which is made in the alternative – is predicated on the fact that Quicken sold defective loans and discovered the defects but sat silently for years while also running the clock on the Trustee's breach of contract claim before finally arguing in court that the clock in fact ran out.   Quicken seeks to deprive the Trustee of the fruits of the Quicken Sale Agreement through its bad faith game of "gotcha."

Quicken thus "played a crafty game" in "breach of the duty of good faith and fair dealing."   *DBALT*, 958 F. Supp. 2d at 504 (internal citation omitted). The ruling in *Dialcom* is instructive.   There, the plaintiff entered into an agreement with AT&T to sell telecommunication services to third-parties in exchange for a two-percent commission on all revenue "billed and collected" thereon by Concert, AT&T's internal billing agent.   *Dialcom*, 2008 WL 2581876, at *2.   When the plaintiff sought to collect its commission on a $750 million account, AT&T refused, arguing that plaintiff was not entitled to the commission because AT&T, rather than Concert, had actually "billed and collected" the revenue.   *Id.*   The plaintiff sued for, among other things, breach of contract and the implied covenant

-47-

of good faith and fair dealing. The court denied AT&T's motion to dismiss the claims, holding that plaintiff sufficiently alleged that AT&T "engaged in a willful and bad faith effort to circumvent the entire [agreement] and deprive plaintiff of the benefits thereof by having [AT&T], instead of Concert, actually bill and collect revenue from the accounts." *Id.* at *10. Thus, the court concluded, "while plaintiff's [good faith claim] and its breach of contract claims involve some overlap, they consist of distinct, non-duplicative, independent claims." *Id.*

Like in *Dialcom*, Quicken engaged in a "willful and bad faith effort to circumvent" the agreements because it sold loans it <u>knew</u> were defective while foreclosures concerning those loans proceeded in the hope that Quicken could avoid its repurchase obligation on those loans if it was ever demanded to do so. A49. Quicken has not simply failed to live up to its obligations by refusing to notify the Trustee of defective loans—Quicken has taken the <u>further step</u> of arguing in court that the Trustee did not seek relief soon enough, even though, if Quicken had provided the requisite notice of defects, it would have assured itself of having to cure or repurchase defective loans shortly thereafter.[9] *Id.*

---

[9]     The cases cited by the District Court are inapposite. SPA9. The good faith and fair dealing claims in *Lorterdan Properties at Ramapo I, LLC v. Watchtower Bible & Tract Society of New York*, No. 11-cv-3656 CS, 2012 WL 2873648 (S.D.N.Y. July 10, 2012), did not contain any allegations in addition to those in the contract claims. The claims for breach of the implied covenant in *National Gear & Piston, Inc. v. Cummins Power System, LLC*, 861 F. Supp. 2d 344, 365 (S.D.N.Y. 2012), were "identical to [the] breach of contract claim." That is not the case here.

Quicken seeks to benefit from its own failure to provide notice, but Quicken cannot use its breach of contract to create the delay that it now asserts bars the action entirely. These machinations constitute "deliberate conduct designed to deprive [the Trustee] of the benefit of its bargain" made for the benefit of the Certificateholders. *Lehman Bros. Int'l v. AG Fin. Prods., Inc.*, 38 Misc. 3d 1233(A), 2013 WL 1092888, at *8 (Sup. Ct. N.Y. Cnty. Mar. 12, 2013) (denying motion to dismiss implied covenant of good faith and fair dealing cause of action as to bidding process allegations); *see also A. Brod, Inc. v. Worldwide Dreams, LLC*, 4 Misc. 3d 1006(A), 2004 WL 1563352, at *2–3 (Sup. Ct. N.Y. Cnty. May 7, 2004) (allowing certain of plaintiffs' claims for breach of the covenant of good faith and fair dealing to proceed); *Knuppel v. Women's Integrated Network, Inc.*, No. 12079/2008, 2008 WL 8212484, at *20 (Sup. Ct. Westchester Cnty. Oct. 21, 2008) (upholding implied covenant claim that "asserts . . . bad acts by [defendant] . . . designed to prevent Plaintiff from exercising his stock option rights and obtaining the fruits of his bargain").

Because the Trustee's claim for breach of the implied covenant is distinct from its breach of contract claim and is founded on different allegations, the District Court's dismissal of that claim should be reversed.

## **<u>CONCLUSION</u>**

For each of the reasons set forth above, the District Court's decision should be reversed in its entirety.

DATED:    New York, New York
           October 21, 2014

                **LOWENSTEIN SANDLER LLP**

By:    <u>s/ Zachary D. Rosenbaum</u>
       Zachary D. Rosenbaum
       1251 Avenue of the Americas
       New York, New York 10020
       T: 212.262.6700
       E: zrosenbaum@lowenstein.com
       *Attorneys for Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Limitations

      1.    This brief complies with Fed. R. App. P. 32(a)(7)(B)(i) because it contains 12, 288 words (according to the Microsoft Word 2010 word-count function), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

      2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

# SPECIAL APPENDIX

**<u>Table of Contents</u>**

**<u>Page</u>**

Opinion and Order of the Honorable Paul A. Crotty,
   dated August 4, 2014, Appealed From ......................................... SPA1

Notice of Appeal, dated August 26, 2014 ........................................... SPA11

i

# SPA1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 4, 2014
```

------------------------------------------------------------X
                                           :

DEUTSCHE BANK NATIONAL TRUST     :
COMPANY, solely as Trustee of the GSR     :
Mortgage Loan Trust 2007-OA1,         :
                                           :

              *Plaintiff*,       :      No. 13 Civ. 6482 (PAC)
                                         :

       -against-          :      **OPINION & ORDER**
                                         :

QUICKEN LOANS INC.,             :
                                         :

             *Defendant*.     :
                                         :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff alleges that Defendant breached its contractual obligation to repurchase mortgage loans that it sold pursuant to materially false representations and warranties. Defendant moves to dismiss the Complaint on the grounds that it is time-barred, among other reasons. For the reasons set forth below, the motion is granted.

## BACKGROUND

      Plaintiff Deutsche Bank National Trust Company is a national banking association with its principal place of business in California, and is the trustee of the GSR Mortgage Loan Trust 2007-OA1. (Compl. ¶ 8.) Defendant Quicken Loans Inc. is a Michigan corporation that originated the mortgage loans at issue, which it initially sold to nonparty Goldman Sachs Mortgage Company pursuant to a Purchase Agreement dated June 1, 2006. (*Id.* ¶¶ 10, 15; Sidman Decl. Ex. 2 (Purchase Agreement).)

      In the 2006 Purchase Agreement, Defendant made a series of representations and warranties ("R&Ws") regarding the quality of the mortgage loans, such as their compliance with

# SPA2

certain underwriting standards.  (*See* Purchase Agreement §§ 3.01, 3.02.)  These R&Ws were made "as of" the closing and transfer dates set forth in subsequent Purchase Confirmation Letters.  (*See id.* §§ 2.01, 3.01.)  Plaintiff alleges that those R&Ws were false when made.  (*See* Compl. ¶¶ 34, 73.)

The Purchase Agreement provides that if either the buyer or seller discovers a material breach of any of the R&Ws, the party discovering the breach must "give prompt written notice to the other."  (Purchase Agreement § 3.03.)  The seller then has 60 days either to cure the breach or to repurchase the loans, and an additional 15 days if the seller "is diligently pursuing a cure and the circumstances reasonably require" an extension.  (*Id.*)  The Purchase Agreement defines the accrual of a cause of action against Defendant as follows:

> Any cause of action against [Quicken] relating to or arising out of the Material Breach of any representations and warranties made in Sections 3.01 and 3.02 shall accrue as to any Mortgage Loan upon (i) the earlier of discovery of such breach by [Quicken] or notice thereof by the Purchaser to [Quicken], (ii) failure by the [Quicken] to cure such Material Breach or repurchase such Mortgage Loan as specified above, and (iii) demand upon [Quicken] by the Purchaser for compliance with this Agreement.

(*Id.*)  The Purchase Agreement also provides that it is governed by New York law.  (*Id.* § 9.04.)

Pursuant to three transactions, each dated April 1, 2007, the mortgage loans and rights under the Purchase Agreement were sold to Plaintiff.  (*See* Compl. ¶¶ 17–18.)  The mortgage loans were then securitized into a pool of residential mortgage-backed securities ("RMBS") in a transaction that closed on May 8, 2007.  (Compl. ¶ 20.)  The Complaint alleges that at an unspecified later date, an investor[1] retained two firms to conduct analyses of the mortgage loans, which revealed breaches of the R&Ws.  (*Id.* ¶¶ 35–44.)

---

[1] The summons with notice filed in New York Supreme Court indicates that this investor was the Federal Home Loan Mortgage Corporation, also known as "Freddie Mac."  (*See* Sidman Decl. Ex. 7.)

# SPA3

On May 8, 2013, the Federal Housing Finance Agency ("FHFA") commenced this action "as conservator of" Freddie Mac and "on behalf of" Plaintiff by filing a summons with notice in New York Supreme Court.  (Sidman Decl. Ex. 7.)  These papers were served on Defendant on September 4, 2013.  (*Id.*)  Defendant removed the action to this Court on September 13, 2013. (*Id.* Ex. 7.)  Although FHFA filed the action in state court, Plaintiff appeared in this Court and filed the Complaint.  FHFA apparently has ceased its pursuit of this action due to a contractual provision that precludes investors from pursuing claims unless certain conditions are satisfied. (*See* Def.'s Mem. at 1 n.2; Pl.'s Opp'n at 13 n.10; Sidman Decl. Ex. 4 § 12.07.)[2]

Defendant contends that the six-year limitations period began to run on the dates indicated in the Purchase Confirmation Letters, the last of which was April 2, 2007, and accordingly that the action is time-barred.  (Def.'s Mem. at 7.)  Plaintiff disagrees, contending that pursuant to the Purchase Agreement's accrual provision, the period did not begin to run until 2013, when it first demanded compliance.  Plaintiff also suggests that even if the accrual and notice-and-cure provisions were ignored, the action is still timely because it was filed exactly six years after the securitization transaction closed on May 8, 2007.  (*See* Pl.'s Opp'n at 9; Compl. ¶ 20.)

---

[2] *See generally Walnut Place LLC v. Countrywide Home Loans, Inc.*, 35 Misc. 3d 1207(A), at *3 (N.Y. Sup. Ct. 2012) (explaining the purposes of such "no-action clauses," which include "deter[ring] individual [certificate] holders from bringing independent law suits which are more effectively brought by the [mortgage loan] trustee"), *aff'd*, 948 N.Y.S.2d 580 (App. Div. 1st Dep't 2012).

3

# SPA4

## DISCUSSION

### I.      Legal Standards

#### A.      Standard for a Motion to Dismiss

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must accept well-pleaded factual allegations as true, "drawing all reasonable inferences in the plaintiff's favor." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011).

Nonetheless, "[a]n action should be dismissed pursuant to Rule 12(b)(6) where documents properly considered on a motion to dismiss reveal that the action is time barred." *Noboa v. MSC Crociere S.p.A.*, No. 08-CV-2896, 2009 WL 1227451, at *2 (S.D.N.Y. May 5, 2009) (Leisure, J.); *see Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). In addition to reviewing the complaint, "the court may also rely upon documents attached to the complaint as exhibits and documents incorporated by reference in the complaint. . . . [,] matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (alteration and quotation marks omitted).

#### B.      Statute of Limitations

Under New York law, "a claim for breach of contract is governed by a six-year statute of limitations." *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 967 N.E.2d 1187, 1190 (N.Y. 2012) (citing N.Y. C.P.L.R. § 213(2)).  "[W]here a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed

# SPA5

from the time when the right to make the demand is complete . . . ."  N.Y. C.P.L.R. § 206(a).  In other words, "the cause of action accrues when the party making the claim possesses a legal right to demand payment . . . . , not when it actually made the demand."  *Hahn*, 967 N.E.2d at 1190–91.

Nevertheless, "New York courts do not instinctively apply CPLR 206(a) in every case where a demand is a predicate to suit.  Rather, they distinguish between substantive demands and procedural demands."  *Cont'l Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 21 (2d Cir. 1996).  Thus, CPLR 206(a) applies only to "procedural" demand requirements, *i.e.*, "where a right exists, but a demand is necessary to entitle a person to maintain an action."  *Id.* at 21.  For example, "the demand upon the Board of Directors as a condition to bringing a shareholder derivative action" is a procedural demand requirement.  *Id.* at 18.  A "substantive" demand requirement, on the other hand, is not subject to CPLR 206(a).  *Id.* at 21.  A substantive demand is "an essential element of the plaintiff's cause of action."  *Id.*  Examples include "bailment cases," "replevin cases involving good-faith purchasers of stolen art," and actions for indemnity by an insurer against a reinsurer.  *Id.*

Therefore, the question is whether a given demand requirement is a procedural one, which does not delay the running of the period of limitations for bringing suit, or a substantive one, which does.

## II.    Analysis

Here, the contracting parties agreed that "[a]ny cause of action . . . shall accrue" only upon the occurrence of three events:  (1) notice of a breach of the R&Ws, (2) Defendant's failure to cure the breach, *and* (3) Plaintiff's demand for compliance.  (Purchase Agreement § 3.03.)  Based on Plaintiff's allegation that no demand was made until sometime in late 2013, the

# SPA6

limitations period would not expire until 2019.

Recent cases, however, have concluded that such accrual clauses are ineffective in delaying the start of the period of limitations beyond the date of an underlying breach of R&Ws. In *ACE Securities Corp. v. DB Structured Products, Inc.*, 977 N.Y.S.2d 229, 231 (App. Div. 1st Dep't 2013) ("*ACE I*"),[3] the applicable contracts provided that "the trustee was not entitled to sue or to demand that defendant repurchase defective mortgage loans until it discovered or received notice of a breach *and* the cure period lapsed." The Appellate Division, however, reversed the lower court's decision that the plaintiff's claims did not accrue until those conditions were satisfied: "To the contrary, the claims accrued on the closing date of the [mortgage loan purchase agreement], when any breach of the representations and warranties contained therein occurred." *Id.*

Following *ACE I*, three courts in this District have reached the same conclusion. In a very similar case, involving a substantially identical accrual provision, Judge Scheindlin held that "the statute of limitations began running" when the "alleged breach of Representations occurred." *Lehman XS Trust, Series 2006-4N v. Greenpoint Mortg. Funding, Inc.*, No, 13-CV-4707, 2014 WL 108523, at *3 (S.D.N.Y. Jan. 10, 2014). Thus, "the Accrual Provision was merely a procedural prerequisite to the filing of a suit, and . . . the substantive *right to demand relief* arose the moment when [the defendant] sold and deposited the allegedly non-conforming Loans into the Trust . . . ." *Id.* Noting that "[t]his issue has been repeatedly addressed and resolved," the court explained that under New York law, "parties may not contractually adopt an accrual provision that effectively extends the statute of limitations before any claims have

---

[3] The New York Court of Appeals has granted leave to appeal this decision. No. APL-2014-156, 2014 WL 2891678, 2014 N.Y. Slip Op. 76202 (June 26, 2014). The appeal is scheduled to be fully briefed on October 28, 2014.

# SPA7

accrued." *Id.* at *4.  Also, Judge Nathan held in a similar case:

> When a plaintiff alleges that a representation or warranty was false, the relevant breach is the false representation or warranty, and the plaintiff has a legal right to demand payment as of the date it was made.  Numerous courts have held that a defendant's failure to repurchase a breached loan does not affect when the plaintiff's claim accrues, and therefore does not constitute a separate breach of contract.

*ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 v. DB Structured Prods., Inc.*, No. 13-CV-1869, 2014 WL 1116758, at *6 (S.D.N.Y. Mar. 20, 2014) ("*ACE II*") (noting that "courts have often approached this issue in the context of determining when a statute of limitations began running"); *accord Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*, No. 12-CV-6168, 2014 WL 1259630, at *3 (S.D.N.Y. Mar. 27, 2014) (Cedarbaum, J.) ("[T]he statute of limitations began running when [the plaintiff] first could have made its demand.").[4]

Plaintiff's argument that all such decisions are "wrongly decided" is unpersuasive. (*See* Pl.'s Opp'n at 10 n.8; Pl.'s 2/10/14 Ltr. at 2 (ECF No. 23).)  U.S. courts are "bound to apply the law as interpreted by New York's intermediate appellate courts" absent "persuasive evidence that the New York Court of Appeals would reach a different conclusion." *Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010) (quotation marks and alteration omitted).  Here, there is no persuasive evidence that the New York Court of Appeals would abrogate the rule stated in *ACE I* and the well-reasoned cases following it in this District.  On the contrary, the Court of Appeals recently expressed concern that delaying the running of the period of limitations until a demand is made "would allow [a plaintiff] to extend the statute of limitations indefinitely by simply

---

[4] One court in this District, however, reached a contrary conclusion prior to *ACE I* and denied a motion for reconsideration after *ACE I* without further explanation.  *See FHFA v. WMC Mortg., LLC*, No. 13-CV-584, 2013 WL 7144159, at *1 (S.D.N.Y. Dec. 17, 2013) (relying on the lower court decision that was subsequently reversed in *ACE I*); No. 13-CV-584, ECF No. 57 (S.D.N.Y. Jan. 7, 2014) (denying motion for reconsideration by memo endorsement).

# SPA8

failing to make a demand." *Hahn*, 967 N.E.2d at 1191.

 Therefore, the Court holds that the period of limitations in this case began to run when the R&Ws were breached. The R&Ws were made "as of" the closing and transfer dates set forth in the various Purchase Confirmation Letters, and the R&Ws were allegedly false when made. Therefore, the R&Ws were allegedly breached on those dates, and Plaintiff was immediately legally entitled to make a demand for compliance.[5] That Plaintiff was unaware of the breach on those dates is irrelevant because "the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered." *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997).

 Defendant submits that the last sale-and-transfer date set forth in the Purchase Confirmation Letters was April 2, 2007, which is more than six years before the action was commenced on May 8, 2013. Although the latest Purchase Confirmation Letter that Defendant submitted with its motion is dated March 7, 2007 (*see* Sidman Decl. Ex. 3), this does not, as Plaintiff argues, raise "fact issues" that preclude dismissal. To the extent that Plaintiff makes contract claims relating to the loans subject to those Purchase Confirmation Letters, the claims are dismissed because any breach occurred more than six years before the action was commenced. But to the extent that Plaintiff can make good-faith allegations regarding Purchase Confirmation Letters dated on or after May 8, 2007, it may do so in an amended complaint. *See generally* Fed. R. Civ. P. 11(b), 15(a)(2).

---

[5] The relevant date is not, as Plaintiff suggests, the later date when the securitization transaction closed, May 8, 2007. By then, the underlying mortgage loans had already been sold to the trust and thus the R&Ws had already become effective per the Purchase Agreement.

# SPA9

**III.    Plaintiff's Remaining Arguments**

The Court has considered Plaintiff's other arguments and finds them to be without merit.

First, the Housing and Economic Recovery Act's provision extending the statute of limitations for actions "brought by the [FHFA] as conservator or receiver," *see* 12 U.S.C. §4617(b)(12), does not apply.  The FHFA is not a party to this case, having apparently abandoned prosecution of this action after realizing that it was not a proper plaintiff.[6] Furthermore, as Defendant notes, "FHFA is already seeking redress in this Court for losses Freddie Mac suffered on its investment in this Trust in a separate matter."  (Def.'s Reply at 8 (citing *FHFA v. Goldman Sachs, et al*, No. 11-cv-6198 (DLC) (S.D.N.Y)).)

The Court also rejects Plaintiff's argument that its claim for breach of the implied covenant of good faith and fair dealing should survive notwithstanding dismissal of the contract claim.  Where, as here, "the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract," "a claim for breach of the implied covenant will be dismissed as redundant."  *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 365 (S.D.N.Y. 2012) (quotation marks omitted).  "Even where the breach of contract claim is dismissed, the good faith/fair dealing claim will be dismissed if it is redundant."  *See Lorterdan Properties at Ramapo I, LLC v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, No. 11-CV-3656, 2012 WL 2873648, *8 (S.D.N.Y. July 10, 2012).  Accordingly, Plaintiff's claim for breach of the implied covenant is dismissed.

## <u>CONCLUSION</u>

The New York Court of Appeals has held that New York's "Statutes of Limitation are statutes of repose representing a *legislative* judgment that occasional hardship is outweighed by

---

[6] *See supra* n.2 and accompanying text.

9

# SPA10

the advantage of barring stale claims." *Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 615

N.E.2d 985, 988 (N.Y. 1993) (citations, quotation marks, and alterations omitted).  Plaintiff's

action was not commenced within the six-year period of limitations.  Accordingly, Defendant's

motion to dismiss is GRANTED.

Plaintiff is granted leave to replead only to the extent that it can make good-faith

allegations regarding mortgage loans subject to Purchase Confirmation Letters dated on or after

May 8, 2007.

Dated: New York, New York          SO ORDERED
       August 4, 2014

PAUL A. CROTTY
United States District Judge

# SPA11

Case 1:13-cv-06482-PAC   Document 30   Filed 08/29/14   Page 1 of 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, solely as Trustee of the GSR Mortgage Loan Trust 2007-OA1,<br><br>        Plaintiff,<br><br>      -against-<br><br>QUICKEN LOANS INC.,<br><br>        Defendant. | Civil Action No. 13-cv-6482 (PAC)<br><br>**NOTICE OF APPEAL** |

   Notice is hereby given that Plaintiff Deutsche Bank National Trust Company, solely as Trustee of the GSR Mortgage Loan Trust 2007-OA1, hereby appeals to the United States Court of Appeals for the Second Circuit from the August 4, 2014 Opinion and Order in the above-captioned case granting Defendant Quicken Loans Inc.'s Motion to Dismiss. A copy of the Opinion and Order is annexed hereto as Exhibit A.

            **Respectfully Submitted,**

Date: August 26, 2014      **LOWENSTEIN SANDLER LLP**

            By: /s/ _____
              Zachary D. Rosenbaum, Esq.
              1251 Avenue of the Americas
              New York, New York 10020
              (212) 262-6700
              *Attorneys for Plaintiff*