# 14-3373-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

FEDERAL HOUSING FINANCE AGENCY, as Conservator of the FEDERAL
HOME LOAN MORTGAGE CORPORATION, on behalf of the TRUSTEE OF
THE GSR MORTGAGE LOAN TRUST 2007-OA1 (GSR 2007-OA1),

*Plaintiff,*

DEUTSCHE BANK NATIONAL TRUST COMPANY,

*Plaintiff-Appellant,*

—against—

QUICKEN LOANS INC.,

*Defendant-Appellee.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

HOWARD F. SIDMAN
HEIDI A. WENDEL
MICHAEL O. THAYER
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939

JEFFREY B. MORGANROTH
MORGANROTH
  & MORGANROTH, PLLC
344 NORTH OLD WOODWARD,
  SUITE 200
Birmingham, Michigan 48009
(248) 864-4000

*Attorneys for Defendant-Appellee Quicken Loans Inc.*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ................................................... viii

PRELIMINARY STATEMENT .............................................................. 1

ISSUES PRESENTED ..................................................................... 6

STATEMENT OF THE CASE ............................................................... 6

STATEMENT OF FACTS .................................................................. 8

    A.    The Representations and Warranties for the Loans at Issue Here Took Effect, and Were Thus Allegedly Breached, More Than Six Years Before This Action Was Brought ......................................................... 8

    B.    DB's Belated Action for Breach of Contract ........................... 10

SUMMARY OF THE ARGUMENT ......................................................... 11

STANDARD OF REVIEW ................................................................. 12

ARGUMENT ............................................................................. 14

    I.     THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS ............................................................ 14

    A.    DB's Cause of Action for Breach of Contract Accrued at the Time of Breach of the Representations and Warranties, Not When Demand Was Made ....................... 15

        1.    The Demand Requirement in the Purchase Agreement is Procedural, Not Substantive .................. 18

        2.    *Continental* Does Not Support DB's Position .............. 24

        3.    DB's Argument Conflates the Alleged Breach and the Remedy for the Breach ........................... 25

    B.    The Accrual Provision Did Not Extend the Time in Which DB Was Required To File Suit .................... 28

        1.    DB's Interpretation of the Accrual Provision Would Violate New York Law by Extending the Statute of Limitations ...................................... 29

        2.    DB's Interpretation of the Accrual Provision Would Also Violate Public Policy Because the Extension of the Statute of Limitations Would be to an Indefinite Date in the Future ................... 35

**TABLE OF CONTENTS**
(Continued)

                                                                    **Page**

     3.    *Bulova* Does Not Support DB's Position ......................38

     4.    The FHFA Could Have Instructed The Trust To Bring This Lawsuit Within the Statute of Limitations Period ..........................................................39

II.    THE HOUSING AND ECONOMIC RECOVERY ACT DOES NOT APPLY ....................................................................40

III.   DB'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WAS ALSO PROPERLY DISMISSED ......................................42

CONCLUSION .........................................................................46

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Ace Sec. Corp. Home Equity Loan Trust, Series 2006-HE4 ex rel.
HSBC Bank USA, Nat'l Ass'n (ACE 2006-HE4) v. DB Structured
Prods., Inc.*,
No. 653394/2012, 2014 WL 1384490 (Sup. Ct. N.Y. Cnty. April 4,
2014) ................................................................................................25

*ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel
HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*,
5 F. Supp. 3d 543 (S.D.N.Y. 2014) ........................................23, 26, 31

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
977 N.Y.S.2d 229 (App. Div. 1st Dep't Dec. 19, 2013) ............................passim

*Amorosa v. AOL Time Warner, Inc.*,
409 F. App'x 412 (2d Cir. 2011) ....................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................44

*Bayridge Air Rights, Inc. v. Blitman Constr. Corp.*,
599 N.E.2d 673 (N.Y. 1992)...........................................................36

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................45

*Bulova Watch Co., Inc. v. Celotex Corp.*,
389 N.E.2d 130 (N.Y. 1979)........................................................38, 39

*Cantor Fitzgerald Inc. v. Lutnick*,
313 F.3d 704 (2d Cir. 2002) ..........................................................13

*Casey v. Merck & Co.*,
653 F.3d 95 (2d Cir. 2011) ...........................................................12

*Citigroup Mortg. Loan Trust 2007-AMC3 ex rel. U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*,
13 Civ. 2843 (GBD), 2014 U.S. Dist. LEXIS 47252 (S.D.N.Y. Mar. 31, 2014)..................................................................22, 26

*Cont'l Cas. Co. v. Stronghold Ins. Co.*,
77 F.3d 16 (2d Cir. 1996) ...........................................................24

*Cornejo v. Bell*,
592 F.3d 121 (2d Cir. 2010) .......................................................13

*Deutsche Alt-A Securities Mortg. Loan Trust, Series 2006-O A1ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Products, Inc.*,
958 F. Supp. 2d 488 (S.D.N.Y. 2013) .....................................26, 27

*Deutsche Bank Nat'l Trust Co. v. HSBC Bank USA, Nat'l Ass'n*,
No. 652001/2013 (Sup. Ct. N.Y. Cnty. Oct. 22, 2014) ..................25

*DiBella v. Hopkins*,
403 F.3d 102 (2d Cir. 2005) .......................................................13

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938)......................................................................13

*Fed. Hous. Fin. Agency v. DB Structured Prods., Inc.*,
652978/2012, 2014 N.Y. Misc. LEXIS 1657 (Sup. Ct. N.Y. Cnty. Mar. 17, 2014).......................................................................25

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
712 F.3d 136 (2d Cir. 2013) .......................................................41

*Fed. Hous. Fin. Agency v. WMC Mortg., LLC*,
No. 13-CV-584, 2013 WL 7144159 (S.D.N.Y. Dec. 17, 2013).........22

*Home Equity Asset Trust ex rel. U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.* (*HEAT 2006-8*),
No. 654157/2012, 2014 N.Y. Misc. LEXIS 4380 (Sup. Ct. N.Y. Cnty. Oct. 1, 2014)................................................................25

*Home Equity Asset Trust ex rel. U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.* (*HEAT 2007-2*),
No. 651174/2013, 2014 N.Y. Misc. LEXIS 4371 (Sup. Ct. N.Y. Cnty. Oct. 1, 2014) .............................................................25

*Home Equity Asset Trust ex rel. U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.*,
No. 652344/2012, 2014 N.Y. Misc. LEXIS 2
(Sup. Ct. N.Y. Cnty. Jan. 3, 2014) ...................................................25

*John J. Kassner & Co. v. City of New York*,
389 N.E.2d 99 (N.Y. 1979) ..............................................32, 33, 34

*LaSalle Bank National Ass'n v. Capco America Securitization Corp.*,
02 CV 9916, 2005 WL 3046292 (S.D.N.Y. Nov. 14, 2005) ..............................37

*Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*,
793 F. Supp. 2d 1189 (W.D. Wash. 2011) ........................................28

*Lehman Bros. Int'l v. AG Fin. Prods., Inc.*,
No. 653284/2011, 2013 WL 1092888 (Sup. Ct. N.Y. Cnty. Mar. 12, 2013) ........................................................43, 44

*Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*,
991 F. Supp. 2d 472 (S.D.N.Y. 2014) ........................................passim

*Lehman XS Trust, Series 2006-GP2 ex rel. U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*,
12 Civ. 7935(ALC) (HBP), 2014 WL 1301944 (S.D.N.Y. Mar. 31, 2014) ........................................................22, 26, 35

*Lorterdan Properties at Ramapo I, LLC v. Watchtower Bible &Tract Soc'y of N.Y., Inc.*,
No. 11-CV-3656, 2012 WL 2873648 (S.D.NY. July 10, 2012) .......................45

*McCarthy v. Olin Corp.*,
119 F.3d 148 (2d Cir. 1997) ............................................12

*Merrill Lynch Mortg. Investors v. Love Funding Corp.*,
   556 F.3d 100 (2d Cir. 2009) ............................................................... 37

*Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2005-S4 ex
   rel. HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital,
   Inc.*,
   No. 653541/2011, 2013 WL 2072817 (Sup. Ct. N.Y. Cnty. May
   10, 2013) ..........................................................................................27, 28

*Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2006-S2 ex
   rel. HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital,
   Inc.*,
   No. 651827/2012 (Sup. Ct. N.Y. Cnty. Dec. 23, 2013) .....................25

*Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2006-S4 ex
   rel. HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital
   Inc.*,
   No. 653390/2012, 2014 N.Y. Misc. LEXIS 2905 (Sup. Ct. N.Y.
   Cnty. June 26, 2014) ...........................................................................25

*Pahuta v. Massey-Ferguson, Inc.*,
   170 F.3d 125 (2d Cir. 1999) ...............................................................13

*T&N PLC v. Fred S. James & Co. of New York*,
   29 F.3d 57 (2d Cir. 1994) .................................................32, 36, 37

*U.S. Bank Nat'l Ass'n ex rel. Home Equity Asset Trust v. DLJ Mortg.
   Capital, Inc.* (*Heat 2007-1*),
   No. 650369/2013, 2014 N.Y. Misc. LEXIS 100 (Sup. Ct. N.Y.
   Cnty. Jan. 15, 2014) ............................................................................25

*U.S. Bank Nat'l Ass'n ex rel. Home Equity Asset Trust v. DLJ Mortg.
   Capital, Inc.* (*Heat 2007-3*),
   No. 651563/13, 2014 N.Y. Misc. LEXIS 1885 (Sup. Ct. N.Y.
   Cnty. Apr. 21, 2014) ............................................................................25

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*,
    959 F. Supp. 2d 443 (S.D.N.Y. 2013) ...................................................28

*U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.*,
    No. 650369/13, 2014 N.Y. App. Div. LEXIS 7060 (App. Div. 1st
    Dep't Oct. 21, 2014) .................................................................23, 25, 34

*Walnut Place LLC v. Countrywide Home Loans, Inc.*,
    948 N.Y.S.2d 580 (App. Div. 1st Dep't 2012) ...................................28

*Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*,
    No. 12-CV-6168 (MGC), 2014 WL 1259630 (S.D.N.Y. Mar. 27,
    2014) .................................................................................................passim

## STATUTES

CPLR § 206(a) ...........................................................................................17, 18

CPLR § 201..................................................................................................31

N.Y. GEN. OBLIG. LAW § 17-103 ................................................................31, 33

## OTHER AUTHORITIES

75 N.Y. Jur. 2d Limitations and Laches § 39 (2013) ....................................32

A N.Y. Prac., Enforcing Judgments and Collecting Debts § 3:20
    (2013) .......................................................................................................32

Carmody-Wait 2d, New York Practice § 13-19 (2013)..........................32

Siegel, N.Y. Prac. § 39 (5th ed. 2013) ....................................................32

## **CORPORATE DISCLOSURE STATEMENT**

In accordance with Rule 26.1(a) of the Federal Rules of Appellate Procedure, the Defendant-Appellee hereby states as follows:

Quicken Loans Inc. is a wholly-owned subsidiary of Rock Holdings Inc. Neither Quicken Loans Inc., nor Rock Holdings Inc., is a publicly-held corporation, and no publicly-held corporation owns ten percent or more of either company's stock.

## PRELIMINARY STATEMENT

This case involves straightforward principles of state law that were properly applied to the undisputed facts by the District Court (Paul A. Crotty, J.) in a thorough, well-reasoned decision. The District Court's holding that Plaintiff Deutsche Bank's ("DB's") breach of contract claims against Quicken Loans are barred by the applicable six-year statute of limitations was firmly based on well established New York law. Among other authority, the District Court relied on a decision on point from the New York Supreme Court, Appellate Division, First Department, *ACE Sec. Corp. v. DB Structured Prods., Inc. ("ACE")*, 977 N.Y.S.2d 229 (App. Div. 1st Dep't Dec. 19, 2013), *rev'g,* 40 Misc. 3d 562 (Sup. Ct. N.Y. Cnty. 2013), which must be followed here, where there is no persuasive evidence that the Court of Appeals would hold otherwise.

In the face of the decision in *ACE*, as well as numerous other decisions from New York State trial courts and the United States District Court for the Southern District of New York that also support the District Court's findings below, DB is forced to argue on this appeal that *ACE* and the Southern District of New York cases were all wrongly decided. However, DB is unable to support this argument. *ACE* and the cases relying on it in the New York state and federal courts are based on the application of basic principles of New York law regarding the statute of limitations for breach of contract claims in the context of breach of representations

and warranties for mortgage loans in residential mortgage-backed securities ("RMBS") transactions. The principles are well established:

- The six-year statute of limitations on a breach of contract action in New York runs from the date of breach, not the date on which a remedy is sought for the breach;

- Conditions precedent for obtaining a remedy for breach do not delay the running of the statute of limitations;

- Parties may not contractually adopt an accrual provision that effectively extends the statute of limitations for breach, particularly where the delay would be indefinite; and

- An alleged failure to provide a remedy for breach of contract does not constitute a separate breach of the contract.

DB seeks to overturn the decision of the District Court properly applying these principles. As the District Court found, DB's breach of contract claims against Quicken Loans, one of the originators of loans securitized in GSR Mortgage Loan Trust 2007-OA1 ("GSR 2007-OA1"), are barred because they were brought more than six years after the alleged breach of the representations and warranties that are the basis of DB's claims. This action was brought over six years after the dates of the supposed breaches. As the District Court held, the alleged breaches of the representations and warranties on the mortgage loans at

issue here occurred during the period from November 2006 through April 2007, when the representations and warranties took effect in accordance with the documents implementing the sales of the loans. As the District Court held, however, the alleged breach of the representations and warranties on the mortgage loans at issue here occurred during the period from November 2006 through April 2007, when the representations and warranties took effect in accordance with the documents implementing the sales of the loans, not on the date on which the securitization transaction closed. Thus, as the District Court found, DB brought its action too late.

On appeal, DB argues that the District Court erred based on DB's argument that certain conditions precedent in the purchase agreement at issue here delayed the running of the statute of limitations until after those conditions were met. In particular, DB argues that the limitations period did not begin running on its action until it chose to serve a demand on Quicken Loans for repurchase of the allegedly defective loans. DB further argues that its position is supported by the language of the purchase agreement indicating that its cause of action for breach did not accrue until after demand was made.

The District Court properly rejected these arguments. First, the argument that a demand requirement delays the statute of limitations was rejected in *ACE*, in all of the decisions of the state trial courts following *ACE*, and in virtually every

decision on the issue in the United States District Court for the Southern District of New York. In addition, the District Court's decision is well supported by other authority on the issue from the New York Court of Appeals, the Southern District of New York, and this Court, including cases cited in DB's brief that DB misconstrues. As that body of case law confirms, DB's position conflates the alleged breach at issue in this case with the remedy for the breach. At its core, DB's argument is a repackaging of the failed argument, made by DB below but abandoned in its original form here, that a defendant's failure to repurchase allegedly defective mortgages is a second breach independent of the breach of the representations and warranties in a purchase agreement. That argument has repeatedly been rejected by every court that has addressed the issue, and should be rejected by this Court in the form in which DB has presented it here as well.

Second, there is no support for DB's claim that the accrual provision was intended to delay the running of the statute of limitations on any breach action. That provision does not mention the statute of limitations. Moreover, DB's interpretation of the accrual provision would violate public policy in New York against extensions of statutes of limitations and particularly against extensions, like the one DB proposes here, to an indefinite date in the future.

Faced with an insurmountable legal hurdle, DB resorts to meritless arguments regarding the quality of the loans and the purported business rationale

for the inclusion of the accrual provision in the mortgage loan purchase agreement.[1]  These arguments have no factual support and, in any event, are irrelevant in evaluating the fundamental and well established legal principles at issue in this appeal.[2]

In addition, the District Court properly held that the Housing and Recovery Act of 2008 ("HERA") does not apply to extend the statute of limitations in this case.  As the District Court found, the Federal Housing Finance Agency ("FHFA") is not the plaintiff here and had no standing to file this suit in the first place.

Finally, the District Court also properly dismissed DB's claim for breach of the implied covenant of good faith and fair dealing because it is duplicative of the breach of contract claim.

Accordingly, the judgment should be affirmed.

---

[1] The speculative nature of DB's claims is highlighted by the lack of plausibility of the specific allegations in the Complaint regarding certain purported loan defects.  Indeed, paragraph 53 of the Complaint alleges that mortgage loan XXXXX2504 was defective, but this mortgage loan had already been paid off in full prior to DB's filing of the Complaint and could not have contributed to any damages allegedly incurred by investors in GSR 2007-OA1.

[2] For example, DB's reliance on unspecified "credit ratings" (Brief and Special Appendix for Plaintiff-Appellant Deutsche Bank National Trust Company ("DB Br.") at 29) to establish the purported intent of the parties in evaluating this unambiguous contract should be rejected.

**ISSUES PRESENTED**

A.      Whether the District Court properly held that under New York law a cause of action for alleged breach of representations and warranties regarding mortgage loans runs from the dates on which the representations and warranties took effect rather than the date on which DB elected to seek a remedy for the alleged breach by serving notice and a demand for repurchase of certain of the loans.

B.      Whether the District Court properly held that the Housing and Economic Recovery Act, which only applies to actions brought by the FHFA, cannot extend the statute of limitations in this case because the FHFA is not the plaintiff here and had no standing to file the suit in the first place.

C.      Whether the District Court properly held that DB's claim for breach of the implied covenant of good faith and fair dealing should be dismissed where it was duplicative of DB's claim for breach of contract.

**STATEMENT OF THE CASE**

On June 1, 2006, Quicken Loans sold the loans at issue in this case to Goldman Sachs Mortgage Company ("Goldman Sachs") pursuant to a purchase and sale agreement that contained representations and warranties concerning the loans.  (A29 (Compl. ¶ 15); A79 [Ex. 2[Purchase Agreement at 1 (WHEREAS Clause)]].)  As set forth in the purchase and sale agreement, the representations and

warranties were effective as of the closing and transfer dates ranging from October 30, 2006 to April 2, 2007, which were set forth in separate letter agreements that applied to each group of loans.  (A29, A80, A87, A90, A96, A100 (Compl. ¶ 16); [Ex. 2 [Purchase Agreement at §§ 1.01, 3.01, 3.02]].)  The mortgage loans and rights under the purchase and sale agreement with Goldman Sachs were subsequently sold to DB.  (A29 (Compl. ¶¶ 17-18).)

On May 8, 2013, the FHFA commenced this action "as conservator" of Freddie Mac and "on behalf of" DB by filing a summons with notice in New York Supreme Court.  (A15-A20 [Sidman Decl. Ex. 7.])  Quicken Loans removed the action to federal court on September 13, 2013.  (A11-A23 [*Id.* at Ex. 7.])  DB filed the Complaint on October 18, 2013.  (A51.)  The Complaint alleged causes of action for breach of contract, rescission, indemnification, and breach of the implied covenant of good faith and fair dealing.  (A46-A50.)

Quicken Loans moved to dismiss DB's breach of contract claims on the ground that they are barred by New York's six-year statute of limitations.  (A69.)  Quicken Loans moved to dismiss DB's rescission and indemnification claims and its breach of the implied covenant of good faith and fair dealing for failure to state a claim on which relief could be granted.  (*Id.*)  After briefing by the parties, the District Court granted the motion and ordered the case closed.  (A680-A689.)  The

judgment was entered on August 4, 2014.  (A5, A680-A689.)  DB filed a notice of appeal from the judgment on August 29, 2014.  (A5, A690.)

## STATEMENT OF FACTS

### A.     The Representations and Warranties for the Loans at Issue Here Took Effect, and Thus Were Allegedly Breached, More Than Six Years Before This Action Was Brought

On June 1, 2006, Quicken Loans entered into a contract, termed the Amended and Restated Seller's Purchase, Warranties and Interim Servicing Agreement ("Purchase Agreement"), to sell mortgage loans to Goldman Sachs from "time to time, pursuant to a separate letter agreement by and between [Quicken Loans] and [Goldman Sachs]."  (A29, A79 (Compl. ¶ 15); [Ex. 2 [Purchase Agreement at 1 (WHEREAS Clause)]].)  In the Purchase Agreement, Quicken Loans made various representations and warranties with respect to the mortgage loans as of the closing and transfer dates set forth in separate letter agreements specific to each group of loans sold to Goldman Sachs prior to the May 8, 2007 GSR 2007-OA1 securitization transaction closing date.  (A29, A80, A87, A90, A96, A100 (Compl. ¶ 16); [Ex. 2 [Purchase Agreement §§1.01, 3.01, 3.02]].)  Each group of loans had closing and transfer dates between October 30, 2006 and April 2, 2007.  (*See* A155-A235 [Ex. 3 [Purchase Confirmations and Commitment Letters]].)  In accordance with the Purchase Agreement, the representations and warranties were effective with respect to each group of loans on these closing and

transfer dates.[3]  (A31, A80, A87, A90, A96, A100 (Compl. ¶ 24); [Ex. 2 [Purchase Agreement §§3.01, 3.02]].)

The loans were subsequently included in a pool of RMBS, along with mortgage loans originated by entities other than Quicken Loans, through several transactions referenced in the Complaint.  (A29-A30 (Compl. ¶¶ 17-22).)  The securitization transaction, pursuant to which GSR 2007-OA1 issued the mortgage-backed securities at issue in this case, closed on May 8, 2007.  (A30 (*Id.* ¶ 20).)

On or about May 8, 2007, the Federal Home Loan Mortgage Corporation ("Freddie Mac") allegedly purchased certificates issued by GSR 2007-OA1.  (A18 [Ex. 7 [Summons with Notice at 2]].)  On September 2, 2011, Freddie Mac's conservator, the FHFA, sued Goldman Sachs for securities fraud as a noteholder in connection with GSR 2007-OA1, among other RMBS trusts.  (*See generally* A378-A513 [Ex. 6] (Complaint, *Fed. Hous. Fin. Agency v. Goldman Sachs*, No. 11-cv-6198 (DLC) (S.D.N.Y. Sept. 2, 2011)).)  The complaint in that action contains

---

[3] *See* A100 [Purchase Agreement §3.02] (Quicken Loans "represents and warrants to the Purchaser, as to each Mortgage Loan, as of the related Closing Date and as of the related Transfer Date . . . ."); A80 [Purchase Agreement §1.01] (defining "Closing Date" as the "date or dates set forth in the related 'Purchase Confirmation'"); A87 [Purchase Agreement §1.01] (defining "Purchase Confirmation" as "[a] letter agreement executed by Purchase and [Quicken Loans] prior to the applicable Closing Date confirming the terms of a prospective purchase and sale of Mortgage Loans"); A90 [Purchase Agreement §1.01] (defining "Transfer Date" as the "date upon which [Quicken Loans'] obligations to service the Mortgage Loans shall cease, which shall be the date set forth in the related Purchase Confirmation, or such other date as mutually agreed by [Quicken Loans] and Purchaser").

many of the same meritless allegations regarding purported loan defects as are alleged in the instant case.  (*Compare* A422, A424-A425, A430-A443, A433-A434 (alleging LTV and owner occupancy violations)) *with* A40-A42 (alleging LTV and owner occupancy violations)).)

## B.  DB's Belated Action for Breach of Contract

On May 8, 2013, over six years after the dates on which the representations and warranties were effective, the FHFA filed a summons with notice ("Summons with Notice") in New York Supreme Court, New York County, alleging that Quicken Loans violated those representations and warranties.  (A17-A20 [Ex. 7 [Summons with Notice]].)  After the suit was filed, DB sent letters demanding repurchase of certain loans on August 27, 2013, October 9, 2013, and October 17, 2013 (each a "Demand Letter" and together the "Demand Letters").[4]  The FHFA served the Summons with Notice on Quicken Loans on September 4, 2013.  (*Id.*)  Quicken Loans removed the action to this Court on September 13, 2013.  (*See* A11-A23 [Ex. 9 [Notice of Removal (Docket No. 1)]].)  DB filed the Complaint on October 18, 2013.  (A26-A52.)

---

[4]  The demand letters sought the repurchase of only 224 of the approximately 1,000 loans Quicken Loans included in the 6SR 2007-OA1 securitization.  (A514-A532 [Exs. 8, 10 -11 [Demand Letters]].)

# SUMMARY OF THE ARGUMENT

I.    The six-year statute of limitations for DB's breach of contract claims ran from the date of breach of the representations and warranties that became effective on the closing and transfer dates set forth in the purchase confirmation letters for each group of loans at issue here, not from the later date on which DB decided to make a demand on Quicken Loans. DB does not dispute that the representations and warranties were effective with respect to each group of loans on the closing and transfer dates, all of which are more than six years before the date on which this action was brought. Under New York law, a claim for breach of contract runs from the date on which the breach of contract occurs, not when demand for payment is made, where, as here, the demand is procedural. The demand requirement here is part of the remedy provision for the alleged breach of contract, not an essential element of the cause of action for breach. (*See infra* at 15-28.)

II.    The accrual provision in the purchase agreement here did not and cannot operate to extend the statute of limitations applicable to DB's breach action until after DB chose to serve notice of a breach of the representations and warranties and an opportunity to cure, and made a demand for repurchase or payment. There is no support for DB's claim that the parties intended the accrual provision to toll the statute of limitations; it does not mention or refer to the statute

of limitations and only established conditions precedent for suit. In any event, regardless of the intent of the parties, New York law does not permit parties to extend the statute of limitations, particularly where, as proposed by DB here, the extension would allow a lawsuit to be filed at an indefinite date in the future. DB's characterization of the accrual provision is clearly an improper attempt to extend the statute of limitations, which, as discussed above, runs on a claim for breach of contract at the time of breach. (*See infra* at 28-40.)

III.    The statute of limitation applicable to DB's action is not expanded by the extender provision of the Housing and Economic Recovery Act of 2008, which only applies to actions brought by the FHFA. The FHFA is not a party to this action. (*See infra* at 40-41.)

IV.    A claim for breach of the implied covenant of good faith and fair dealing must be dismissed when it is duplicative of plaintiff's breach of contract claim or if plaintiff fails to plead the elements of such a claim. (*See infra* at 42-45.)

## STANDARD OF REVIEW

The District Court's application of a state's statute of limitations is reviewed by this Court *de novo*. *Casey v. Merck & Co.*, 653 F.3d 95, 99 (2d Cir. 2011). Likewise, this Court reviews *de novo* the District Court's dismissal of a case under Fed. R. Civ. P. 12(b)(6). *McCarthy v. Olin Corp.*, 119 F.3d 148, 152 (2d Cir. 1997).

As initially set forth in *Erie R.R. Co. v. Tompkins*, "it is well established that in diversity cases state law governs not only the limitations period but also the commencement of the limitations period." *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002); *see also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 79-80 (1938). This Court has acknowledged that in conducting its *de novo* determination of state law, it is "bound 'to apply the law as interpreted by New York's intermediate appellate courts . . . unless [it] find[s] persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion.'" *Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010) (internal citation omitted); *see also DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005) ("[R]ulings from [state intermediate appellate] courts are a basis for 'ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'") (internal citation omitted); *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999) ("We are bound, as was the district court, to apply the law as interpreted by New York's intermediate appellate courts . . . unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion.").

The undisputed facts here show that DB's breach of contract claims are barred. Thus, the District Court properly dismissed the Complaint. *Amorosa v.*

*AOL Time Warner, Inc.*, 409 F. App'x 412, 416-17 (2d Cir. 2011) (holding that claim was properly dismissed where complaint showed on its face that the claim was time-barred).

## ARGUMENT

## I. THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS

The District Court's decision dismissing DB's case based on the running of the statute of limitations rests upon a straightforward application of settled principles of New York law.  As shown below, the District Court's findings with respect to these basic principles are well-grounded in New York law as interpreted by *ACE*, 112 A.D.3d 522 (1st Dep't Dec. 19, 2013), a decision on point in the New York State Supreme Court, Appellate Division, First Department.  That decision is binding on this Court absent persuasive evidence, which does not exist here, that the New York Court of Appeals would rule differently.  In addition, as discussed further below, the District Court's findings are consistent with every decision of the Southern District of New York that has considered the issue except one, as well as numerous decisions of the New York State trial courts.  Finally, authoritative decisions of the New York Court of Appeals, as well as of this Court, relating to the basic principles of New York law applied by the District Court, including a number of the decisions cited by DB in its appeal brief, also support the District Court's decision here.

**A.    DB's Cause of Action for Breach of Contract Accrued at the Time of Breach of the Representations and Warranties, Not When Demand Was Made**

The District Court held that the six-year statute of limitations for DB's breach of contract claims ran from the date of breach of the representations and warranties that became effective on the closing and transfer dates set forth in the purchase confirmation letters for each group of loans at issue here.  (A687.)  Judge Crotty stated that:

> [T]he Court holds that the period of limitations in this case began to run when the R&Ws were breached.  The R&Ws were made "as of" the date of the closing and transfer dates set forth in the various Purchase Confirmation Letters, and the R&Ws were allegedly false when made.  Therefore, the R&Ws were allegedly breached on those dates, and Plaintiff was immediately legally entitled to make a demand for compliance.  That Plaintiff was unaware of the breach on those dates is irrelevant because "the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered."

(*Id.* (citing *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (footnote omitted)).  This holding is consistent with the undisputed facts as well as the relevant law.

On appeal, DB does not challenge the basic facts:  Quicken Loans made various representations and warranties with respect to the mortgage loans sold to Goldman Sachs pursuant to the Purchase Agreement.  (A640 (Compl. ¶ 16).)  The representations and warranties were effective with respect to each group of loans

- 15 -

"as of the Closing Date and as of the Transfer Date."  (A642 (Compl. ¶ 24).)  As defined in the transaction documents, each group of loans had closing and transfer dates on or before April 2, 2007.  (*See* A155-A235 [Ex. 3 [Purchase Confirmations and Commitment Letters]].)  Although DB argued below that purported fact issues as to when the allegedly defective loans were transferred precluded dismissal, DB has abandoned this argument.[5]  In response to DB's claim,[6] the District Court stated that "to the extent that Plaintiff can make good-faith allegations regarding Purchase Confirmation Letters dated on or after May 8, 2007, it may do so in an amended complaint."[7]  (A687 (citing Fed. R. Civ. P. 11(b), 15(a)(2).)  DB did not amend its complaint and has not challenged the District Court's finding regarding the April 2, 2007 date on this appeal.  Thus, there is no dispute that the alleged breach of the representations and warranties applicable to the loans at issue in this

---

[5] In any event, the transfer date for each individual loan is irrelevant because the R&Ws became effective – by definition – on the closing and transfer dates indicated in separate letter agreements for each group of loans sold to Goldman Sachs for the GSR 2007-OA1.  (A29, A80, A87, A90, A96, A100 [Ex. 2 at §§1.01, 3.01, 3.02]; *see* Memorandum of Law in Support of Defendant Quicken Loans Inc.'s Motion to Dismiss ("In. Br.") at 3-4.)  Thus, when the loans were actually transferred to Goldman Sachs is immaterial.

[6] The District Court noted that "[a]lthough the latest Purchase Confirmation Letter that Defendants submitted with its motion is dated March 7, 2007, (*see* Sidman Decl. Ex. 3), this does not, as Plaintiff argues, raise 'fact issues' that preclude dismissal."  (A687.)

[7] The District Court noted that "Plaintiff is granted leave to replead only to the extent that it can make good faith allegations regarding mortgage loans subject to Purchase Confirmation Letters dated on or after May 8, 2007."  (A689.)

case occurred at the latest on April 2, 2007 – more than six years before this suit was commenced.[8]

The District Court's dismissal of DB's breach of contract claims is also well-grounded in New York law. As Judge Crotty, noted, "[u]nder New York law, 'a claim for breach of contract is governed by a six-year statute of limitations.'" (A683 (citing *Hahn Auto Warehouse, Inc. v. Am. Zurich Ins. Co.*, 967 N.E.2d 1187, 1190 (N.Y. 2012) (citing CPLR 213(2)).) Moreover, as Judge Crotty found, the six-year statute of limitations for breach of contract claims in New York runs from the date on which the breach of contract occurs, not when demand for payment is made. (*Id.*) The limitations period starts running "when the party making the claim possesse[d] a legal right to demand payment . . . , not when it actually made the demand.'" (A684 (citing *Hahn*, 967 N.E.2d at 1190-91).) CPLR Section 206(a), cited by the District Court, states that "[w]here a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make a demand is complete . . . . " (*Id.* at A683-A684).[9]

_____

[8] The District Court rejected DB's claim that the relevant date was the later date when the securitization transaction closed, which was May 8, 2007. (A687 n.5.) As Judge Crotty stated, "[b]y then, the underlying mortgage loans had already been sold to the trust and thus the R&Ws had already become effective per the Purchase Agreement." (*Id.*)

[9] DB cites *Aetna Life & Casualty Co. v. Nelson* for the uncontroversial proposition that a limitations period commences when all facts necessary to entitle

- 17 -

## 1. The Demand Requirement in the Purchase Agreement is Procedural, Not Substantive

The District Court held that the question of whether the right to demand payment was complete at the time of breach of the representations and warranties, and hence the application of CPLR 206(a), turned on whether the demand requirement was a procedural one or a substantive one. Judge Crotty found that:

> "New York courts do not instinctively apply CPLR 206(a) in every case where a demand is a predicate to suit. Rather, they distinguish between substantive demands and procedural demands." *Cont'l Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 21 (2d Cir. 1996). Thus, CPLR 206(a) applies only to "procedural" demand requirements, *i.e.*, "where a right exists, but a demand is necessary to entitle a person to maintain an action." *Id.* at 18. A "substantive" demand requirement, on the other hand, is not subject to CPLR 206(a). *Id.* at 21. A substantive demand is "an essential element of the plaintiff's cause of action." *Id.* Examples include "bailment cases," "replevin cases involving good-faith purchasers of stolen art," and actions for indemnity by an insurer against a reinsurer." *Id.*

> Therefore, the question is whether a given demand requirement is a procedural one, which does not delay the running of the statute of limitations for bringing suit, or a substantive one, which does.

the plaintiff to relief have occurred (DB Br. at 19 (citing *Nelson*, 67 N.Y.2d 169, 175 (1986))), and it relies upon *Santos v. Dist. Council of New York* for the proposition that a limitations period begins to run at the point when "the plaintiff could have first successfully maintained a suit based on that cause of action." (DB Br. at 15, 19 (citing *Santos*, 619 F.2d 963, 968-69 (2d Cir. 1980) (internal quotations and citation omitted))). However, both cases are entirely consistent with the First Department's decision in *ACE*, which held that all facts necessary to plaintiff's breach of a representation and warranty claim occurred, and plaintiff could have alleged breach of contract, at the closing of the transaction when the representations and warranties were made and the breach occurred. *ACE*, 977 N.Y.S.2d at 231.

- 18 -

(A684.)  The District Court determined, based on the language of the agreement and governing case law, that the demand requirement in the Purchase Agreement was procedural and complying with the demand did not delay the statute of limitations.  (A684-A687.)

The demand requirement in the Purchase Agreement is a procedural pre-suit remedial provision that, under established New York law, is neither an element of the breach of contract claim nor grounds for a separate breach of contract claim. The Purchase Agreement requires as a condition precedent for suit, "(1) notice of a breach of the R&Ws, (2) Defendant's failure to cure the breach, and (3) Plaintiff's demand for compliance."[10]  (A684 (citing A114 [Purchase Agreement § 3.03]).)  In DB's Complaint, and in its brief below and on this appeal, DB repeatedly alleges that Quicken Loans breached the Purchase Agreement by selling defective mortgage loans in violation of the representations and warranties in that agreement. (A36-A42 (Compl. ¶¶35-57); Plaintiff's Memorandum of Law in Opposition to Defendant Quicken Loans Inc.'s Motion to Dismiss ("Opp. Br.") at 1, 14; DB Br.

_____

[10] Judge Crotty stated that "[b]ased on Plaintiff's allegation that no demand was made until sometime in late 2013, the limitations period would not expire until 2019."  (A684-85.)  However, the three demand letters sent to Quicken Loans by Deutsche Bank sought the repurchase of only 224 of the approximately 1,000 loans Quicken Loans sold to Goldman Sachs. (A514-A532.)  Accordingly, under DB's interpretation of the accrual provision, the limitations period for claims with respect to these approximately 800 loans has not yet begun to run, notwithstanding that the Complaint alleges that the sample review purportedly established a defect rate of 100%.

at 11-12.)  And, as discussed below, DB no longer asserts that the alleged failure to comply with the provision is a separate breach of contract.  Thus, the demand requirement in the Purchase Agreement cannot, as DB asserts, be an essential part of the claim for breach because a sale of allegedly defective loans would have breached the Purchase Agreement even if DB had not exercised its contractual remedy for the purported breach.  *See Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A. ("Wells")*, No. 12-CV-6168 (MGC), 2014 WL 1259630, at *3 (S.D.N.Y. Mar. 27, 2014) (the statute of limitations runs when the representations and warranties are allegedly breached and thus "[t]he demand at issue here is not a substantive element of the underlying claim for breach but merely a procedural prerequisite to suit"); *Lehman XS Trust*, *Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.,* 991 F. Supp. 2d 472, 479 (S.D.N.Y. 2014) ("The Accrual Provision is a pre-suit remedial provision that is neither an element of the breach of contract claim, not grounds for a separate breach of contract claim.  The Trust's suit is barred under New York's six-year statute of limitations and thus untimely.")

In finding that the Purchase Agreement's pre-suit remedial provisions requirements were procedural rather than substantive, the District Court looked to *ACE*, the only appellate decision in New York that has addressed the issue of when the statute of limitations starts running on breach of contract claims involving

allegedly defective mortgage loans in a securitization transaction. *ACE*, 977

N.Y.S.2d 230-31. The New York Supreme Court, Appellate Division, First

Department, held in *ACE* that the statute of limitations starts running on the date on

which the representations and warranties were breached, not on the later date when

a demand for repurchase of the defective loans or payment for damages was made.

*Id.* As the First Department stated, in unanimously reversing the lower court:

> The motion court erred in finding that plaintiff's claims did not accrue
> until defendant either failed to timely cure or repurchase a defective
> mortgage loan (*see Structured Mortg. Trust 1997-2 v. Daiwa Fin.
> Corp.*, No. 02 Civ. 3232 (SHS), 2003 WL 548868 (S.D.N.Y. Feb. 25,
> 2003)). To the contrary, the claims accrued on the closing date of the
> MLPA, . . . when any breach of the representations and warranties
> contained therein occurred (*see Ely-Cruikshank Co. v. Bank of
> Montreal*, 81 N.Y.2d 399, 402 (1993); *Varo, Inc. v. Alvis PLC*, 261
> A.D.2d 262, 267-68 (N.Y. App. Div. 1st Dep't 1999), *lv. denied*, 95
> N.Y.2d 767 (2000).

*Id.* at 231 (parallel citations omitted). The First Department granted the defendant's

motion to dismiss the trustee's claims as barred by the statute of limitations

because they were brought more than six years after the date on which the

representations and warranties were allegedly breached. *Id.* at 230-31.

The District Court properly rejected DB's claim, repeated on this appeal,

that *ACE* was "wrongly decided." (A686.) Judge Crotty noted that "U.S. courts are

'bound to apply the law as interpreted by New York's intermediate appellate courts'

absent 'persuasive evidence that the New York Court of Appeals would reach a

different conclusion.'" (*Id.* (citing *Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir.

2010) (quotation marks and alteration omitted)).)  The District Court found that "there is no persuasive evidence that the New York Court of Appeals would abrogate the rule stated in *ACE I* . . . ."  (*Id.*)  "On the contrary," Judge Crotty stated, "the Court of Appeals recently expressed concern that delaying the running of the period of limitations until a demand is made 'would allow [a plaintiff] to extend the statute of limitations indefinitely by simply failing to make a demand.'" (A687 (citing *Hahn*, 967 N.E.2d at 1191).)

Every other decision on the issue in the U.S. District Court for the Southern District of New York, with one exception,[11] has similarly held, following *ACE,* that the statute of limitations on claims for breach of representations and warranties runs from the date on which the representations and warranties were made and not from the date of demand for repurchase or payment.[12]  Citing *ACE*, the court in

_____

[11] *See Fed. Hous. Fin. Agency v. WMC Mortg., LLC* ("*WMC Mortgage*"), No. 13-CV-584, 2013 WL 7144159, at *1 (S.D.N.Y. Dec. 17, 2013) (Alvin Hellerstein, J.) (denying motion for summary judgment); *WMC Mortgage*, No. 13-CV-584, ECF No. 57 (S.D.N.Y. Jan. 7, 2014) (denying motion for reconsideration by memo endorsement).  As the District Court noted, Judge Hellerstein's initial decision in *WMC Mortgage* was issued prior to the First Department's decision in *ACE* and his denial of reconsideration thereafter was "without further explanation." (A686 n.4.)

[12]*See Citigroup Mortg. Loan Trust 2007-AMC3 ex rel. U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*, 13 Civ. 2843 (GBD), 2014 U.S. Dist. LEXIS 47252, at *6-8 (S.D.N.Y. Mar. 31, 2014); *Lehman XS Trust, Series 2006-GP2 ex rel. U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc*., 12 Civ. 7935(ALC) (HBP), 2014 WL 1301944, at *3-4 (S.D.N.Y. Mar. 31, 2014); *Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A*., No. 12-CV-6168 (MGC), 2014 WL 1259630, at *3 (S.D.N.Y. Mar. 27, 2014); *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc*., 991 F. Supp. 2d

*Lehman XS Trust* observed that "[t]his issue has been repeatedly addressed and resolved, most recently in a case from New York's intermediate appellate court . . . ." 991 F. Supp. 2d at 477. The court in *Lehman XS Trust* dismissed the plaintiff's breach of contract claims, finding that "[t]he alleged underlying breach occurred when the Trust experienced a 'material and adverse' effect. The Trust experienced such effect when [the defendant] allegedly made untrue Representations regarding the quality and characteristics of the Loans, sold the Loans and entered into the Purchase Agreement with [the loan purchaser] . . . ," more than six years before the plaintiff commenced the suit. *Id.* at 479. Likewise, in *ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.* (*ACE (S.D.N.Y)*), Judge Nathan held that "[w]hen a plaintiff alleges that a representation or warranty was false, the relevant breach is the false representation or warranty, and the plaintiff has a legal right to demand payment as of the date it was made." 5 F. Supp. 3d 543, 552 (S.D.N.Y. 2014). Indeed, in a decision issued two months after Judge Crotty's decision below, the First Department reiterated its holding in *ACE*, stating that "[i]f a contractual representation or warranty is false when made, a claim for its breach accrues at the time of the execution of the contract." *U.S. Bank Nat'l Ass'n*

---

472 479 (S.D.N.Y. 2014); *ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 552 (S.D.N.Y. 2014).

- 23 -

*v. DLJ Mortg. Capital, Inc.*, No. 650369/13, 2014 N.Y. App. Div. LEXIS 7060, at *1 (App. Div. 1st Dep't Oct. 21, 2014) (citing *ACE*, 977 N.Y.S.2d 229) (parallel citation omitted).

### 2. *Continental* Does Not Support DB's Position

Relying chiefly on *Continental*, DB claims that, in addition to the First Department's decision in *ACE*, these cases also were "wrongly decided." (DB Br. at 32.) However, *Continental*, which was cited by Judge Crotty in his decision below (A684), does not, as DB claims, support its argument that the demand provision in the Purchase Agreement here is substantive rather than procedural. (DB Br. at 35-36.) *Continental*, a suit against a reinsurer for breaching a reinsurance contract, is distinguishable from the instant case because the reinsurance contract could only be breached if the reinsurer rejected the demand for payment. *Cont'l Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 21 (2d Cir. 1996). The reinsurer's only duty under the contract was to pay claims for reinsurance and the demand was therefore an essential part of the plaintiff's claim. (*Id.*) By contrast, in the instant case, the Purchase Agreement was allegedly breached by the sale of loans that violated the representations and warranties, regardless of whether any claim was ever made by the purchaser for repurchase of the allegedly defective loans or payment of damages. *See ACE*, 977 N.Y.S.2d at 231 (breach of representations and warranties occurs at time of closing). Thus, the demand for

payment under the Purchase Agreement was merely a procedural requirement to obtain a remedy for the alleged breach of the representations and warranties.

### 3.   DB's Argument Conflates the Alleged Breach and the Remedy for the Breach

At its core, DB's position is merely a repackaging of the argument, repeatedly rejected by every court that has addressed the issue,[13] that a defendant's

---

[13] *Deutsche Bank Nat'l Trust Co. v. HSBC Bank USA, Nat'l Ass'n,* No. 652001/2013 (Sup. Ct. N.Y. Cnty. Oct. 22, 2014) (Friedman, J.); *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc*., No. 650369/13, 2014 N.Y. App. Div. LEXIS 7060 (App. Div. 1st Dep't Oct. 21, 2014) (Tom, Sweeny, Renwick, Andrias, Clark, JJ.); *Home Equity Asset Trust ex rel. U.S. Bank Nat'l Ass'n  v. DLJ Mortg. Capital, Inc*. (*HEAT 2006-8*), No. 654157/2012, 2014 N.Y. Misc. LEXIS 4380 (Sup. Ct. N.Y. Cnty. Oct. 1, 2014) (Friedman, J.); *Home Equity Asset Trust ex rel. U.S. Bank Nat'l Ass'n  v. DLJ Mortg. Capital, Inc*. (*HEAT 2007-2*), No. 651174/2013, 2014 N.Y. Misc. LEXIS 4371 (Sup. Ct. N.Y. Cnty. Oct. 1, 2014) (Friedman, J.); *Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2006-S4 ex rel. HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital Inc*., No. 653390/2012, 2014 N.Y. Misc. LEXIS 2905 (Sup. Ct. N.Y. Cnty. June 26, 2014) (Friedman, J.); *U.S. Bank Nat'l Ass'n ex rel. Home Equity Asset Trust  v. DLJ Mortg. Capital, Inc.* (*Heat 2007-3*), No. 651563/13, 2014 N.Y. Misc. LEXIS 1885 (Sup. Ct. N.Y. Cnty. Apr. 21, 2014) (Schweitzer, J.); *Ace Sec. Corp. Home Equity Loan Trust, Series 2006-HE4 ex rel. HSBC Bank USA, Nat'l Ass'n* (ACE 2006-HE4) *v. DB Structured Prods., Inc*., No. 653394/2012, 2014 WL 1384490 (Sup. Ct. N.Y. Cnty. April 4, 2014); *Fed. Hous. Fin. Agency v. DB Structured Prods., Inc*., 652978/2012, 2014 N.Y. Misc. LEXIS 1657 (Sup. Ct. N.Y. Cnty. Mar. 17, 2014); *U.S. Bank Nat'l Ass'n ex rel. Home Equity Asset Trust v. DLJ Mortg. Capital, Inc*. (*Heat 2007-1*), No. 650369/2013, 2014 N.Y. Misc. LEXIS 100 (Sup. Ct. N.Y. Cnty. Jan. 15, 2014) (Bransten, J.); *Home Equity Mortg. Trust, Series 2006-1 v. DLJ Mortg. Capital, Inc*., No. 156016/12, 2014 N.Y. Misc. LEXIS 136 (Sup. Ct. N.Y. Cnty. Jan. 10, 2014) (Schweitzer, J.); *Home Equity Asset Trust ex rel. U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc*., No. 652344/2012, 2014 N.Y. Misc. LEXIS 2 (Sup. Ct. N.Y. Cnty. Jan. 3, 2014) (Bransten, J.); *Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2006-S2 ex rel. HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital, Inc.*, No. 651827/2012 (Sup. Ct. N.Y. Cnty. Dec. 23, 2013) (Sherwood, J.);

failure to repurchase defective mortgage loans is a second breach independent of breach of the representations and warranties in a purchase agreement. In its brief below, DB made this separate-breach argument explicitly, claiming that Quicken Loans committed two independent breaches of the Purchase Agreement, first by violating the representations and warranties and, second, by failing to cure or repurchase the defective loans. (*See* Opp. Br. at 9 ("the QSA is clear that failure to repurchase is a separate, distinct breach. . . .")). On appeal, DB abandons that version of the argument, maintaining instead that breach of the repurchase provision is an "essential element" of the claim for breach of contract. (*See* DB Br. at 16, 33-35.)

Regardless of how it is packaged, however, this argument for an independent duty to repurchase has been uniformly rejected. In *Deutsche Alt-A Securities Mortg. Loan Trust, Series 2006-OA1 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Products, Inc.* ("*Deutsche Alt-A*")*,* an action by the trustee for a

---

*Citigroup Mortg. Loan Trust 2007-AMC3 ex rel. U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*, 13 Civ. 2843 (GBD), 2014 U.S. Dist. LEXIS 47252 (S.D.N.Y. Mar. 31, 2014) (Daniels, J.); *Lehman XS Trust, Series 2006-GP2 ex rel. U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 12 Civ. 7935(ALC) (HBP), 2014 WL 1301944 (S.D.N.Y. Mar. 31, 2014) (Carter, J.); *Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*, No. 12-CV-6168 (MGC), 2014 WL 1259630,(S.D.N.Y. Mar. 27, 2014) (Cedarbaum, J.); *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472 (S.D.N.Y. 2014) (Scheindlin, J.); *ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543 (S.D.N.Y. 2014) (Nathan, J.).

mortgage loan securitization for breach, the court held, for example, that "the repurchase provision was merely a remedy for breach of the representations and warranties" and not a ground on which plaintiff could bring a claim. 958 F. Supp. 2d 488, 498-99 (S.D.N.Y. 2013) (internal quotations and citation omitted).[14] The court noted that "New York law . . . does not recognize pre-suit remedial provisions as constituting separate promises" that provide a basis for suit. *Id.* at 499-500. Instead, the court continued, "under New York law, claims which are subject to pre-suit cure or demand requirements accrue when the underlying breach occurs, not when the demand is subsequently made or refused." *Id.*

Similarly, in *Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2005-S4 ex rel. HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital, Inc.* ("*Nomura*"), the plaintiff argued that its claims were not barred by the statute of limitations on the theory that the defendant had a continuing obligation to repurchase defective mortgages and that the cause of action for breach of that obligation did not accrue until the obligation was breached. No. 653541/2011, 2013 WL 2072817, at *8 (Sup. Ct. N.Y. Cnty. May 10, 2013). The court disagreed, finding that "[t]he repurchase obligation . . . is merely a remedy. It is not a duty independent of the Mortgage Representation breach of contract claims." *Id.* at *8;

---

[14] The defendant sponsor in *Deutsche Alt-A* was Deutsche Bank Structured Products, which took a position diametrically opposed to the position DB is taking in the instant case. *See generally Deutsche Alt-A*, 958 F. Supp. 2d 488.

*see also Walnut Place LLC v. Countrywide Home Loans, Inc.*, 948 N.Y.S.2d 580, 581 (App. Div. 1st Dep't 2012) (holding that a repurchase provision "merely provides for a remedy in the event of a breach" and is not an independent basis for suit). Contrary to plaintiff's position, the court found, "[t]he statute of limitations runs from the time of breach of the Mortgage Representations, not from the time plaintiff elected to make demands for repurchase." *Nomura*, 2013 WL 2072817, at *8; *see also Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1193-94 (W.D. Wash. 2011) (statute of limitations ran from date of alleged breach of representations and warranties in loan purchase agreement, not from date on which plaintiff demanded payment of damages for loss suffered on liquidated loan); *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, 959 F. Supp. 2d 443, 447 (S.D.N.Y. 2013) (same).

## B. The Accrual Provision Did Not Extend the Time in Which DB Was Required To File Suit

This Court should also reject DB's claim that the District Court failed to give proper effect to the language of the Purchase Agreement by failing to find that DB's cause of action did not accrue until DB served notice of a breach of the representations and warranties, gave Quicken Loans an opportunity to cure, and made a demand for repurchase or payment. (DB Br. at 19-26). There is no support for DB's claim (*see* DB Br. at 26-32) that the parties intended the accrual provision to toll the statute of limitations rather than simply impose conditions precedent on

an action for breach of the representations and warranties. The accrual provision neither mentions nor refers to the statute of limitations. Moreover, regardless of the intent of the parties, the District Court's finding that the accrual provision cannot delay the running of the statute of limitations as a matter of public policy is based on well-established principles of New York law. *See infra* at Section I.B.1. DB's argument that the District Court's finding would render the accrual provision superfluous (*see* DB Br. at 34), in addition to being incorrect, misses the point. The accrual provision cannot extend or delay the running of the statute of limitations without violating public policy in New York.

Furthermore, DB's claim that the accrual provision simply triggers the running of the statute of limitations rather than delaying or extending it (*see* DB Br. at 16-17) should likewise be rejected. As discussed above, *supra* Section I.A, under New York law, the statute of limitations runs on a breach of contract claim at the time of breach rather than when demand is made. Thus, it cannot be disputed that DB's interpretation of the accrual provision is an attempt to extend or delay the running of that statute of limitations to a later date, and DB's arguments to the contrary are unavailing.

### 1. DB's Interpretation of the Accrual Provision Would Violate New York Law by Extending the Statute of Limitations

As the District Court indicated, the Purchase Agreement provides "that '[a]ny cause of action . . . shall accrue' only upon the occurrence of three events: (1)

notice of a breach of the R&Ws, (2) Defendant's failure to cure the breach, *and* (3) Plaintiff's demand for compliance."  (A684 [citing Purchase Agreement § 3.03).)

Judge Crotty observed that in *ACE* the First Department rejected the theory that such a provision delays the running of the limitations period.  (A685.)  He stated:

> Recent cases . . . have concluded that such accrual clauses are ineffective in delaying the start of the period of limitations beyond the date of an underlying breach of R&Ws.  In *ACE Securities Corp. v. DB Structured Products, Inc.*, 977 N.Y.S.2d 229, 231 (App. Div. 1st Dep't 2013) ("*ACE I*"), the applicable contracts provided that "the trustee was not entitled to sue or to demand that defendant repurchase defective mortgage loans until it discovered or received notice of a breach *and* the cure period lapsed."  The Appellate Division, however, reversed the lower court's decision that the plaintiff's claims did not accrue until those conditions were satisfied . . . ."

(*Id*. (footnote omitted).)  Judge Crotty noted that, as discussed above, *see supra* Section I.A.1, *ACE* held that notwithstanding the provision requiring a demand prior to suit, the limitations period began running at the time of breach of the representations and warranties.  (*Id.* (citing *ACE,* 977 N.Y.S.2d at 231).)

The District Court further observed that another court in the Southern District of New York similarly concluded, following *ACE*, that an accrual provision like the one here did not delay the running of the statute of limitations:

> In a very similar case, involving a substantially identical accrual provision, Judge Scheindlin held that "the statute of limitation began running" when the "alleged breach of Representations occurred." *Lehman XS Trust, Series 2006-4N v. Greenpoint Mortg. Funding, Inc.*, No. 13-CV-4707, 2014 WL 108523, at *3 (S.D.N.Y. Jan. 10, 2014).  Thus, "the Accrual Provision was merely a procedural prerequisite to the filing of a suit, and . . . the substantive *right to demand relief* arose

the moment when [the defendant] sold and deposited the allegedly non-conforming Loans into the Trust . . . ." *Id.*

(A685.)  The District Court also cited *ACE (S.D.N.Y)*, 2014 WL 116758, at *6 , and *Wells*, 2014 WL 1259630, at *3, both of which also held that the statute of limitations on a trust's claims for defective mortgages runs from the date of the alleged breach of the representations and warranties despite a contractual provision providing that demand was required prior to suit.

In addition to following the First Department's decision in *ACE*, as it must, *see supra* Section I.A.1, the District Court's finding that the accrual provision cannot delay the running of the statute of limitations is grounded in well-established principles of New York law.  As the District Court stated, DB's position would have the effect of extending the statute of limitations applicable to its breach claim beyond six years, which is not permitted under New York law as a matter of public policy.  CPLR § 201 provides that:

> An action . . . must be commenced within the time specified in this article unless a different time is prescribed by law or a *shorter* time is prescribed by written agreement.  No court shall extend the time limited by law for the commencement of an action.

(Emphasis added.)  Moreover, under New York law, parties may not validly contract to delay the running of the statute of limitations prior to the accrual of a cause of action under the contract.  New York General Obligations Law § 17-103, entitled "Agreements waiving the statute of limitation," provides that an agreement

modifying the statute of limitations is only effective "if made after the accrual of the cause of action."[15]

In accordance with this policy, in *John J. Kassner & Co. v. City of New York* ("*Kassner*"), 389 N.E.2d 99 (N.Y. 1979), the New York Court of Appeals invalidated an accrual provision in a contract adopted at the contract's inception. The case involved a contract between an engineering company and the City for the relocation of utility facilities at the site of a proposed new police headquarters in Manhattan. *Id.* at 101-02. The contract, entered into in 1967, contained a "limitations provision" delaying accrual of any cause of action under the contract until a certificate of final payment was filed in the City comptroller's office. *Id.* at 101. After various disputes arose between the parties regarding the amounts remaining due on the contract after work was completed, in 1974 a certificate of final payment was filed in the comptroller's office, and in 1975, the plaintiff

_____

[15] *See* Siegel, N.Y. Prac. § 39 (5th ed. 2013) ("An agreement to lengthen the statute of limitations is invalid if made before the cause of action accrues . . . ."); 75 N.Y. Jur. 2d Limitations and Laches § 39 (2013) (stating N.Y. GEN. OBLIG. LAW § 17-103 "is exclusive and agreements made prior to the accrual of the cause of action have no effect"); A N.Y. Prac., Enforcing Judgments and Collecting Debts § 3:20 (2013) ("An agreement to lengthen the statute of limitations is invalid if made before the cause of action accrues . . . ."); Carmody-Wait 2d, New York Practice § 13-19 (2013) ("If the agreement to extend the statute of limitations is made at the inception of liability it is unenforceable, because a party cannot, in advance, make a valid promise that a statute founded in public policy will be inoperative."); *T&N PLC v. Fred S. James & Co. of New York,* 29 F.3d 57, 61 (2d Cir. 1994) ("New York law allows parties to a contract to extend the applicable statute of limitations once a cause of action has accrued.") (citing N.Y. GEN. OBLIG. LAW § 17-103(1)).

engineering company sued the City for the disputed amounts. *Id.* In its answer,

the City asserted the six-year statute of limitations for breach of contract. *Id.* The

plaintiff moved to dismiss the defense, and the City cross-moved for summary

judgment on the defense. *Id.* The trial court found that the accrual provision in the

contract was controlling, granted plaintiff's motion, and denied the City's motion.

*Id.* at 102. The Court of Appeals reversed, dismissing the case based on General

Obligations Law § 17-103(1). *Id.* at 103-04. The court held that under this law,

which "is exclusive," contractual agreements to extend a statute of limitations

"made prior to the accrual of the cause of action . . . have 'no effect.'" *Id.* at 103.

Because the accrual provision "was adopted at the inception of the contract," the

court held that "it may not serve to extend the Statute of Limitations." *Id.* at 104.

"If the agreement to waive or extend the Statute of Limitations is made at the

inception of liability it is unenforceable," the Court of Appeals stated, "because a

party cannot in advance, make a valid promise that a statute founded in public

policy shall be inoperative." *Id.* at 103 (citations and internal quotation marks

omitted).

Similarly, the contractual provision relied on by DB to extend the statute of

limitations until after demand by DB was entered into at the inception of the

contract and not after DB's alleged cause of action accrued. DB's attempt to

distinguish *Kassner,* 389 N.E.2d at 102-03, on the ground that the accrual

provision in that case was not "clearly intended to define when a breach occurred" (*see* DB Br. at 38) fails for several reasons. First, like in *Kassner*, in the instant case the accrual provision was not "clearly intended to define when a breach occurs." (*Id.); see also Kassner,* 389 N.E.2d at 102-03. There is no mention of the statute of limitations in the accrual provision here. Furthermore, the ruling in *Kassner* was not based on interpretation of the parties' intent but on the public policy behind statutes of limitation in New York, and in particular the strict limitations the law imposes on extensions of the statute of limitations. *See Kassner,* 389 N.E.2d at 104 ("[S]ince [the accrual provision] was adopted at the inception of the contract and not after the cause of action had accrued, it may not serve to extend the Statute of Limitations."). *See also U.S. Bank Nat'l Ass'n v DLJ Mortg. Capital, Inc*., No. 650369/13, 2014 N.Y. App. Div. LEXIS 7060, at *1 (App. Div. 1st Dep't Oct. 21, 2014) (holding that where an RMBS contract "d[id] not explicitly address the statute of limitations[,]" the contact "did not indicate a clear intent to alter the accrual date relating to claims for a breach thereof").

DB acknowledges that *Lehman XS Trust* involved an accrual clause similar to the one at issue here and makes no attempt to distinguish that case, arguing only that non-material differences between the two accrual provisions are somehow relevant and that it was "wrongly decided." (DB Br. at 32.) DB's attempt to distinguish *ACE*, as well as *ACE (S.D.N.Y)*, and *Wells* is also unavailing. DB

- 34 -

claims that these cases are distinguishable because although the purchase agreements at issue in those cases required a demand prior to suit, they did not expressly refer to accrual of the purchaser's cause of action.  (DB Br. at 32). However, as the court found in *Lehman XS Trust*, in rejecting a similar argument, this distinction is irrelevant because an accrual provision cannot operate to delay the running of the statute of limitations without violating public policy.  991 F. Supp. 2d at 478.  As Judge Scheindlin stated in the *Lehman XS Trust*:

> The Trust attempts to distinguish *ACE Securities* by stating that "the contract at issue in *ACE* did not contain a provision expressly stating the conditions that must be satisfied before a cause of action can *accrue*."  That is true.  However, parties may not contractually adopt an accrual provision that effectively extends the statute of limitations before any claims have accrued.

*Id*. (emphasis in original). *See also Lehman XS Trust, Series 2006-GP2 ex rel. U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc*., 12 Civ. 7935(ALC) (HBP), 2014 WL 1301944, at *3 (S.D.N.Y. Mar. 31, 2014) ("the accrual provision cannot extend the statute of limitations") (citing *Lehman XS Trust,* 2014 WL 108523 at *3, *3 n.48).  Similarly, in this case, the purported accrual provision could not expand the time in which the Trust was required to file suit without violating public policy.

### 2. DB's Interpretation of the Accrual Provision Would Also Violate Public Policy Because the Extension of the Statute of Limitations Would be to an Indefinite Date in the Future

As a matter of public policy, New York does not permit parties to extend the statute of limitations to an indefinite date in the future.  Based on DB's reading of

the demand requirement, DB could delay the running of the statute of limitations until it chose to make a demand on Quicken Loans. (A34, A114, A34 (Compl. at ¶ 30) [Ex. 2 [Purchase Agreement § 3.03]].) This renders the accrual provision doubly invalid under New York law; in addition to violating public policy by extending the statute of limitations, DB's interpretation of the accrual provision would also violate public policy by extending the statute of limitations to an indefinite date.

In *Bayridge Air Rights, Inc. v. Blitman Constr. Corp.*, the New York Court of Appeals struck down as invalid and void a contract provision that purported to delay accrual of a breach of contract claim until an indefinite date when a final payment from an escrow account happened to be made. 599 N.E.2d 673, 674-75 (N.Y. 1992). The court held that New York law prohibited accrual provisions that "extend the limitations period to an indefinite date in the future in contravention of the six-year maximum provided by the statute . . . ." *Id.* at 674. Similarly, in *T&N PLC v. Fred S. James & Co. of New York*, this Court invalidated a tolling agreement because it purported to delay commencement of the limitations period indefinitely. 29 F.3d 57, 61-62 (2d Cir. 1994). The Court held that the parties' attempt to contractually redefine accrual was impermissible "tamper[ing]" with the statute of limitations. *Id.* Similarly, this Court should reject DB's claim that the District Court erroneously declined to enforce the accrual provision, as interpreted

by DB, on the ground that it would extend the statute indefinitely.  (*See* DB Br. at 38 (citing A686-A687).)

DB's claim that its interpretation of the accrual provision would not indefinitely extend the statute of limitations is contradicted by its own arguments on this appeal.  (*See* DB Br. at 26-31).  DB plainly states in its brief that "[t]he Accrual Provision here was intended to provide a remedy to the Trustee – ***without regard to how long after closing such breaches are discovered***."  (DB Br. at 28) (emphasis added).  Claiming that the District Court "fail[ed] to take into account the commercial realities of RMBS" (*see* DB Br. at 26), DB argues that permitting a trustee to sue to seek the repurchase of breaching mortgage loans throughout the 30-year life of the trust "makes perfect commercial sense and is, in fact, a commercial necessity." (DB Br. at 26.)  DB claims that the accrual provision should be interpreted to permit the trust to bring an action any time defects are discovered during the 30-year life of the mortgages included in the securitization. (*Id.*)[16]

---

[16] Tellingly, in the two cases DB cites for the proposition that the "underlying facts are illustrative of how R&W breaches are often discovered many years after closing" (DB's Br. at 27), the discovery of allegedly defective loans occurred less than six years after the representations and warranties were made. *See Merrill Lynch Mortg. Investors v. Love Funding Corp.*, 556 F.3d 100, 104-05 (2d Cir. 2009); *LaSalle Bank National Ass'n v. Capco Am. Securitization Corp.*, 02 CV 9916 (RLC), 2005 WL 3046292 (S.D.N.Y. Nov. 14, 2005).  Accordingly, contrary to DB's contentions, *Love Funding* and *Capco America* illustrate the

By its very nature, this argument would mean that the statute of limitations would be extended indefinitely. DB's claim that it could not unreasonably delay bringing an action once it received notice of defective mortgages does not ameliorate the problem. (DB Br. at 39.) DB maintains that it had no duty to determine whether any of the mortgage loans were defective and that it was entitled to await notice from "the Certificate-holder," namely the FHFA, which allegedly did not provide notice of any defects to DB until 2013, or from Quicken Loans. (*Id.*) Yet DB also claims that, among other possible scenarios that might cause delay to DB's alleged discovery of defects, the servicer of the loans "could intentionally delay release of the loan files to investors that would have revealed breaches," causing delays in the date on which DB, in its allegedly passive role, would be notified of any defective loans and would seek repurchase of those loans. (DB Br. at 30-31.) Thus, it is clear that DB's argument would in fact extend the statute of limitations for claims for breach of the representations and warranties to an indefinite date in the future.

### 3. *Bulova* Does Not Support DB's Position

DB's reliance on *Bulova Watch Co., Inc. v. Celotex Corp.*, 389 N.E.2d 130 (N.Y. 1979) (*see* DB Br. at 42-43), to support its argument that the accrual provision allows for an indefinite limitation period is also unavailing. *Bulova*

reasonableness of applying the six year limitations period running from the date of closing.

involved a contract for the installation of a roof and twenty years of maintenance. 389 N.E.2d at 131. Not surprisingly, the Court of Appeals held that the statute of limitations on any claims regarding improper repairs did not start running until the defendant allegedly failed to perform adequate repairs during the twenty-years in which the maintenance obligation was in effect. *Id.* at 133. The duty to make proper repairs was clearly independent of the duty to install the roof, rather than merely a remedy for failure to install the roof adequately in the first place, unlike the repurchase provision here. *See id.*

### 4. The FHFA Could Have Instructed The Trust To Bring This Lawsuit Within the Statute of Limitations Period

As the District Court observed, "[t]he New York Court of Appeals has held that New York's 'Statutes of Limitations are statutes of repose representing a *legislative* judgment that occasional hardship is outweighed by the advantage of barring stale claims.'" (A688-689 (citing *Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 615 N.E.2d 985, 988 (N.Y. 1993) (emphasis in original)).) Thus, DB's argument that the equities favor the Trust in this case (*see, e.g.,* DB Br. at 21)[17] is irrelevant.

Moreover, the equities do not in fact favor the Trust here because the Trust's noteholders could have instructed DB to file the lawsuit before the limitations

---

[17] This argument is also contradicted by DB's claim that the statute of limitations was intended for Quicken's benefit – to give it a chance to cure before being sued. (DB Br. at 36-37.)

period ran.  DB purports to bring this action as trustee on behalf of the GSR 2007-OA1 Trust, which issued certificates purchased by the FHFA, among others.  (DB Br. 43-46.)  However, the FHFA, which filed the summons with notice commencing this action in state court in New York, sued Goldman Sachs, as sponsor of the securitization, on September 2, 2011, for securities fraud in connection with allegedly defective loans in GSR 2007-OA1, among other trusts.  (A378-A513.)  Yet while bringing that action and numerous others against loan originators involving residential mortgage-backed securities, the FHFA (or any other noteholder) did not instruct DB to initiate this action until after the statute of limitations had expired.

## II.    THE HOUSING AND ECONOMIC RECOVERY ACT DOES NOT APPLY

The District Court also properly found that the Housing and Economic Recovery Act of 2008 ("HERA") does not apply to extend the statute of limitations.  Judge Crotty stated that:

> [T]he Housing and Economic Recovery Act's provision extending the statute of limitations for actions "brought by the [FHFA] as conservator or receiver," *see* 12 U.S.C. § 4617(b)(12), does not apply.  The FHFA is not a party to this case, having apparently abandoned prosecution of this action after realizing that it was not a proper plaintiff.  Furthermore, as Defendant notes, "FHFA is already seeking redress in this Court for losses Freddie Mac suffered on its investment in this Trust in a separate matter."

(A688 (footnote omitted) (citing *Fed. Hous. Fin. Agency v. Goldman Sachs*, No. 11-cv-6198 (DLC) (S.D.N.Y.)).)  As Judge Crotty noted, "[a]lthough FHFA filed the action in state court, [DB] appeared in this Court and filed the Complaint. FHFA apparently has ceased its pursuit of this action due to a contractual provision that precludes investors from pursuing claims unless certain conditions are satisfied."  (A682.)

HERA's purpose is "to give FHFA the time to investigate and develop potential claims on behalf of the GSEs . . . ."  *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 712 F.3d 136, 142 (2d Cir. 2013).  The breach of contract claims asserted in the Summons with Notice and the Complaint, however, never belonged to the FHFA because its ability to bring suit in connection with the Trust is expressly constrained by a "no action" clause in the transaction documents.  (*See* In. Br. at 1, 1 n.1.)  Further, dismissal of DB's claims would not prejudice the FHFA's ability to seek recovery of any purported losses to Freddie Mac; in fact, as noted above, *supra* at 9, the FHFA is already seeking redress in this Court for losses Freddie Mac suffered on its investment in this Trust in a separate matter.  *Fed. Hous. Fin. Agency v. Goldman Sachs*, No. 11-cv-6198 (DLC) (S.D.N.Y.).

## III. DB'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WAS ALSO PROPERLY DISMISSED

The District Court also properly found that DB's claim for breach of the implied covenant of good faith and fair dealing should be dismissed on the ground that it was duplicative of DB's breach of contract claim. (A688.) Judge Crotty stated that:

> The Court also rejects Plaintiff's argument that its claim for breach of the implied covenant of good faith and fair dealing should survive notwithstanding dismissal of the contract claim. Where, as here, "the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract," "a claim for breach of the implied covenant will be dismissed as redundant." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys, LLC*, 861 F. Supp. 2d 344, 365 (S.D.N.Y. 2012) (quotation marks omitted). "Even where the breach of contract claim is dismissed, the good faith/fair dealing claim will be dismissed if it is redundant." *See Lorterdan Properties at Ramapo I, LLC v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, No. 11-CV-3656, 2012 WL 2873648, *8 (S.D.N.Y. July 10, 2012).

(A688.) This reasoning is well-supported by the undisputed facts and the relevant law.

The first two purported bases for DB's claim, that Quicken Loans (i) sold defective loans and (ii) remained silent about these defects (DB Br. at 55), are alleged breaches of Quicken Loans' contractual obligations and are part of DB's breach of contract claim. (A47-A48 (Compl. ¶¶ 82-86).) The supposed third basis for the implied covenant claim, that Quicken Loans waited until after the

- 42 -

limitations period ran (and after it was sued by the Trustee) to assert this defense, is not pled anywhere in the Complaint and is, in any event, nonsensical. It is the New York legislature and court system that are responsible for establishing and evaluating defenses to contract claims, not Quicken Loans. Because DB has not properly alleged a claim for the breach of the implied covenant of good faith and fair dealing and has failed to plead facts not duplicative of its breach of contract claim, DB's implied covenant claim must be dismissed.

DB's implied contract claim should also be dismissed on the grounds that (1) the complaint fails to plead essential elements of a cause of action for breach of the implied covenant of good faith and fair dealing and (2) the allegations pled in support of this claim are the same as those supporting DB's breach of contract claim. As discussed below, courts have dismissed claims for breach of the implied covenant of good faith and fair dealing on both these grounds based on New York law.

Under New York law, a claim for breach of the implied covenant of good faith and fair dealing arises only in two circumstances, neither of which is pled or pertains here. *See Lehman Bros. Int'l v. AG Fin. Prods., Inc.,* No. 653284/2011, 2013 WL 1092888 (Sup. Ct. N.Y. Cnty. Mar. 12, 2013). First, such a claim may arise "where a contract provides for a party's exercise of discretion, but does not expressly require that the discretion be exercised reasonably." *Id.* at *2. Second, it

may arise where the defendant engages in a purposeful scheme to deprive plaintiff of the benefits of the contract through "bad faith targeted malevolence in the guise of business dealings."  *Id.* at *3 (internal citation and quotations omitted).  DB has not alleged either of these circumstances and they do not apply here.

Moreover, DB's claim for breach of the implied covenant of good faith and fair dealing is based on the same facts that underlie DB's breach of contract claim. In support of its implied covenant claim, DB alleges that Quicken Loans breached the implied covenant "[b]y selling breaching Mortgage Loans for placement into the Trust and keeping silent about them, only to let foreclosure proceedings go forward which, Quicken might argue, had the effect of destroying the Trustee's rights to have those breaching Mortgage Loans repurchased at a price necessary to make the Trust whole."  (A49 (Compl. ¶ 96).)  Similarly, in support of its breach of contract claim, DB alleges that Quicken Loans sold the mortgage loans knowing they violated the representations and warranties.  (A34 (Compl. ¶ 31), A47-A48 (Compl. ¶¶ 82-87).)  DB's bare claim that Quicken Loans purportedly allowed foreclosure proceedings to go forward without protest fails to allege a plausible set of facts pleaded with sufficient particularity to support a "reasonable inference" that Quicken Loans is "liable for the misconduct alleged" as required by Federal Rule of Civil Procedure 8.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *id.* at 663 (holding that a claim has facial plausibility only "when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (to survive a motion to dismiss, plaintiffs must plead sufficient facts to state a claim for relief that is plausible on its face).  In addition to lacking any factual basis, these conclusory statements add nothing to the allegation that Quicken Loans breached the representations and warranties with respect to the mortgage loans.

Under these circumstances, courts dismiss claims for breach of the implied covenant of good faith and fair dealing.  *See Lorterdan Properties at Ramapo I, LLC v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, No. 11-CV-3656, 2012 WL 2873648, at *9 (S.D.NY. July 10, 2012) (dismissing claim for breach of implied covenant of good faith and fair dealing as "essentially identical" to breach of contract claim where both were "premised on the same behavior").  As is apparent from the complaint, DB's implied covenant claim is based on the same allegations as its breach of contract claim, namely Quicken Loans' purported breach of the representations and warranties with respect to the mortgage loans.  Accordingly, DB's claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the District Court's

dismissal of DB's action.

Dated:        November 25, 2014        Respectfully Submitted

  /s/  Howard F. Sidman
Heidi A. Wendel
Howard F. Sidman
Michael O. Thayer
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
hwendel@jonesday.com
hfsidman@jonesday.com
mothayer@jonesday.com

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH, PLLC
3000 Town Center
Suite 1500
Southfield, MI 48075
Telephone: (248) 355-3084
Fax: (248) 355-3017
jmorganroth@morganrothlaw.com

*Attorneys for Defendant-Appellee Quicken Loans Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B)(i).  It contains 12,148 words as counted by the word-processing system used to prepare the brief, exclusive of the parts of the brief exempted from the type-volume limitation by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it had been prepared in proportionally-spaced typeface using Microsoft Office Word 2007 with a size 14 Times New Roman font.

Dated:       November 25, 2014

  /s/ Howard F. Sidman